EUNICE L. BUTLER v. WALTER L. BADGER and Others.[1]

December 31, 1914.

Nos. 18,912, 18,770—(145, 39).

**Trust deed — undue influence — interference of courts.**

Plaintiff executed to defendant a deed of certain property in trust for the uses and purposes therein expressed; the main object and purpose of the trust was to relieve plaintiff, then well along in years, and in failing

[1] Reported in 150 N. W. 233.

Note.—Upon the question of undue influence as a ground for relief from a voluntary trust, see note in 19 L.R.A. 767.

health, of the burden of managing the property, and to preserve it for her heirs, to be distributed to them in equal shares at her death. Two years thereafter, through guardians duly appointed by the probate court, plaintiff brought this action to set the trust deed aside, on the ground that she was mentally incompetent and incapable of understanding the transaction, and that the deed was obtained by undue influence.

(1) It is *held* that the evidence supports the findings of the trial court that plaintiff was competent to enter into the transaction, that she fully understood the same, and that the deed was not obtained by undue influence.

(2) The absence of a clause reserving in plaintiff the power of revocation did not invalidate the deed. The absence of such a provision was an item of evidence or circumstance bearing upon the issue whether the deed was the deliberate act of plaintiff, and of her mental capacity to enter into the agreement.

(3) A further clause relieving the trustee from interference by the courts in respect to the ordinary management of the affairs of the trust, has reference to mere details, and was not intended to exempt the trustee from the control of the court in respect to substantial transactions.

(4) An order granting leave to the trustee to mortgage a part of the property for the purpose of raising funds to pay claims, and the order of the court making such mortgage take precedence of plaintiff's notice of *lis pendens, held* authorized by the application therefor.

Action in the district court for Hennepin county by the guardians of Eunice L. Butler to set aside a certain trust deed and for an accounting. The case was tried before Steele, J., who made findings that plaintiff was not entitled to any relief. From the judgment entered pursuant to the order for judgment and from an order vacating a *lis pendens,* plaintiff appealed. Affirmed.

*Patterson, Loring & Anderson* and *J. M. Pulliam,* for appellant.

*James D. Shearer, L. B. Byard, Ell Torrence* and *Henry Deutsch,* for respondents.

BROWN, C. J.

H. C. Butler, for many years a resident of Minneapolis, died in 1896, leaving a considerable property. He left surviving him plaintiff, his widow, and four grown children, one son and three daughters. The property involved in this action passed directly to the widow from decedent, and she has since owned and controlled the same.

It consists of both productive and nonproductive real estate situated in Minneapolis, where the widow has at all times resided since the death of her husband, and is of the value of about $60,000. She managed the property from the death of her husband with the assistance of some of her children, and real estate dealers, until September, 1910, when she conveyed all the real estate to defendant for the uses and purposes expressed in the deed of conveyance, and transferred to him also a certain sum of money then on deposit to her credit in a bank. Defendant accepted the trust and proceeded to carry out the terms and provisions thereof. In October, 1912, some two years after the trust deed was so executed, the probate court upon proper petition duly appointed plaintiff's daughter and one Allison guardians of her person and property, with the usual authority in such cases provided. The guardians so appointed thereafter brought this action to set aside and annul the trust deed, on the grounds that plaintiff at the time it was executed was mentally incompetent to enter into the transaction, and that the deed was procured by means of undue influence. The cause was tried without a jury, and upon findings fully detailing the facts the court directed the entry of judgment for defendant, thus in all things affirming the validity of the deed, declaring the competency of plaintiff, and negativing the claim of undue influence. Judgment was entered accordingly and plaintiff appealed.

The assignments of error challenge the findings of fact insofar as plaintiff was found by the court to have been competent to enter into the trust agreement, and upon the subject of undue influence, and also certain rulings upon the admission and exclusion of evidence.

The assignments in reference to the admission and exclusion of evidence do not call for discussion. We have examined the same and discover no errors of a character to justify a new trial. Plaintiff was given considerable latitude in the introduction of her evidence, and that excluded, if not fully covered in a general way by other evidence, was not such as to require a retrial of the action.

We come then to the main question whether the evidence reasonably supports the findings.

At the time the deed was executed plaintiff was 78 years of age, and

undoubtedly incapable of managing properly her large property interests. Not that she was wholly incompetent, or incapable of understanding particular transactions, but her interests taken as a whole were greater than she alone could properly and safely care for. For a number of years prior she had committed the general control thereof to agents, one of whom was defendant Badger, who, for some time immediately preceding the date of the trust deed, had exclusive control of her real estate interests. Prior to that time one of her daughters had obtained from her a lease of valuable property at a rental less than the property was worth, and another daughter, the guardian who brought this action, obtained from her a lease of other property at a nominal rental, the lease extending over a period of 15 years, with an option on the part of the daughter to renew the same for a like period. The third daughter was an invalid residing in California. The son had died prior to the execution of the deed, leaving a widow and children, who would be entitled to his share of the property on the death of plaintiff. It was the desire and wish of plaintiff that the property be preserved for her children, and distributed to them in equal proportions at her death. There had been some differences between the daughters with respect to the property and its disposition. All were satisfied that the mother should be relieved in some way permanently of the burden of managing the property, and several conferences were held with a view to devising plans to that end. The invalid daughter was represented in these negotiations by an attorney, the plaintiff by two or more attorneys, all of whom were of high standing in the profession with no interest to serve save that of their client. It was finally, after considerable discussion and consideration, agreed by all the parties, except the present guardian of plaintiff, that a conveyance of the property to defendant Badger was the most feasible and appropriate method of accomplishing the desired result, namely, relief of plaintiff from the burdens incident to the management of the property; Badger to hold it in trust, or the proceeds thereof in case of sale, to the end that it could be equally distributed among the heirs at the death of plaintiff. The situation and the purpose of the deed were fully explained and laid before

plaintiff by her attorneys, and the evidence indicates that she fully comprehended the transaction. The trust deed was prepared accordingly and properly signed and executed by both parties. By it the property was conveyed to Badger, in trust, for the purposes therein mentioned, and he was thereby clothed with exclusive authority to carry out the intention of the transaction. His duties and obligations are clearly and fully set forth therein, the rights of all of plaintiff's children, and the wife and children of her son, are fully protected, and each equally provided for in the final distribution of the estate. It provided for the payment of $3,000 per annum to plaintiff for her support and maintenance during life, and the sum of $25 per month to each daughter, and the widow of the deceased son, with the condition, as to the daughters who hold leases of part of the trust property, that such leases be surrendered and cancelled. And finally, and within three years after the death of plaintiff, that the remainder of the estate be divided equally between those parties. One daughter surrendered her leasehold rights but the other, the present guardian of plaintiff, declined to do so, and the monthly payments have not been made to her. The trustee is clothed with the general care and management of the property, and in respect thereto "shall not be obliged to submit himself to the jurisdiction of any court in the ordinary" affairs thereof. His compensation is fixed at $300 per year, and the usual broker's commission for sales and rentals. He is required to execute a bond in the sum of $10,000 conditioned for the proper management of the estate, with provisions for the execution of a larger bond upon demand of the plaintiff, or after her death by a majority of the beneficiaries. The deed contains no power of revocation.

The findings of the trial court set forth the facts in greater detail, but the statement here made is deemed sufficient to a full understanding of the transaction, the validity of which is questioned.

1. The rule guiding us in the determination of the question whether the findings of the trial court are supported by the evidence is too well established to require restatement. Expressed in one form, it is that the findings will not be overturned unless the evidence is clearly and palpably against the conclusion of the trial court. In the light

of this rule we have examined the record, with the result that evidence is found therein reasonably tending to sustain the conclusions of the court below upon both points in controversy, namely, the mental capacity of plaintiff, and the alleged undue influence, and to preclude the view that the evidence is clearly and palpably against the findings.

2. We find no evidence of undue influence on the part of defendant Badger. While it is true that he had for some time prior to the transaction acted as the agent of plaintiff in the management of the property, in entering into the trust agreement plaintiff was represented in all the negotiations by members of her family, and by attorneys employed by her, and whose interest in the matter was solely that of protecting plaintiff. The contract vests in Badger no proprietary interest in the property, there was no overreaching by Badger, and he acquired thereby no undue or other unconscionable advantage or benefit from the transaction. He was simply given the control of the property, with the right and duty of exercising supervision thereof, and this primarily for the purpose of relieving plaintiff from further responsibility in the premises and to avoid, also, further controversy between the daughters concerning the property and its disposition. The transaction accomplished what plaintiff and her advisers thought was for her best interests, and of all those interested in the estate. We are clear that no undue influence was shown. Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; Howard v. Farr, 115 Minn. 86, 131 N. W. 1071.

3. The evidence bearing upon the question of plaintiff's mental capacity took a wide range, covered a period of years preceding the transaction, and brought to light numerous acts, conduct and lapses of memory on plaintiff's part, and matters indicating in a measure a gradual weakening of her mental power. But taken as a whole the evidence did not require a finding that she was wholly incapacitated or incapable of understanding this or any other particular transaction. Her condition of mind did not arise from any organic ailment, but was naturally incident to her declining years. There was no showing of such a hopeless decay or loss of mental faculties as to require a finding of senile *dementia,* and we are not justified in

holding that plaintiff was so afflicted, or in declaring, as a matter of law, that the trial court should have so found. A detailed discussion of the evidence upon this branch of the case would serve no useful purpose. We have examined it with care with the result stated, and therefore pass the question without further comment. The question of burden of proof is unimportant. Whether upon plaintiff or defendant in a case of this kind, it is unnecessary to consider. We hold that the findings are sustained within the rule guiding this court, and that result follows even though the burden of proof lay with defendant.

4. The fact that the trust deed contained no power of revocation is not fatal to its validity. 39 Cyc. 93; Brown v. Trust Co. 87 Md. 377, 40 Atl. 256. The absence of such a reservation is a circumstance to be considered in determining whether the transaction was the deliberate act of the parties (Russell's Appeal, 75 Pa. St. 269), but it is not an essential to a valid trust of this character. In the case at bar the evidence makes it clear that the parties intended the trust to continue during the life of plaintiff, and this purpose would have failed had the power of revocation been reserved. Nor does the clause found in the deed, by which Badger is relieved from interference by the courts in the management of the ordinary affairs of the trust, render the transaction invalid. If this had been an attempt wholly to exclude the authority of the court to control the conduct of the trustee, and to vest in him arbitrary authority to sell and dispose of the estate in harmony with his own pleasure and without regard to the best interests of the estate, no doubt the trust would, at least, to the extent of such grant of arbitrary power, be declared void. Trusts of this kind are subject to the supervisory control of the courts, even in cases where attempt is made by express stipulation between the parties to avoid judicial interference. 39 Cyc. 315; Keeler v. Lauer, 73 Kan. 388, 85 Pac. 541. To what extent this clause in the deed will authorize the trustee to proceed with the trust affairs, without application to the court, is not necessary to determine. That he cannot go beyond the detailed administration of the estate without the approval of the court, or the acquiescence of all interested parties, seems clear. But what transactions or dealings

with the property would go beyond the "ordinary affairs" thereof, we do not stop to consider.

5. Subsequent to the execution of the deed, and after the decision of the court sustaining the trust, the trustee made application to the court for an order permitting him to mortgage a part of the property to obtain funds for the payment of taxes and other expenses of the estate, arising in part from the expense of the litigation and additional payments to plaintiff, required because of an injury suffered by her, necessitating the employment of physicians and nurses to treat and care for her. The application also prayed for the vacation of a *lis pendens* filed in the action by plaintiff at the time the suit was brought. After due hearing the court made an order granting the application and providing therein that the mortgage executed by the trustee should take precedence to rights protected by the *lis pendens*. From this order plaintiff appeals. Since the decision of the court in the main action is sustained, it is unnecessary to consider the questions here presented. That the court had the power to authorize the temporary loan is clear, and as the main action falls the *lis pendens* falls with it, and that puts an end to this appeal. The application justified the order.

Judgment and order affirmed.