MERCHANTS TRUST AND SAVINGS BANK v. JOHN SCHUDEL
AND ANOTHER.[1]

December 20, 1918.

No. 21,016.

**Cancelation of deed — undue influence — findings sustained by evidence.**
    The evidence sustains the findings of the trial court that a deed was obtained from a man of advanced age, mentally incompetent to transact business, through the exercise of undue influence by one who had acted as his confidential adviser.

Action by the guardian of the estate of Peter Schletti, incompetent, in the district court for Ramsey county for cancelation of a certain deed and for an accounting of the rents and profits of the real estate. The answer alleged that Peter Schletti possessed a sound mind and was competent at the time he conveyed the real estate; that he realized the nature of the transaction and that he persuaded defendant to purchase the real estate in question. The case was tried before Michael, J., who made

[1]Reported in 169 N. W. 795.

findings and as conclusions of law set aside the deed, the note and mortgage described in the opinion, and adjudged Peter Schletti to be the owner of the certificate of indebtedness of the city of St. Paul for $350. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Albert J. Mueller,* for appellants.

*O. E. Holman,* for respondent.

LEES, C.

This action was brought by the plaintiff bank as guardian of the estate of Peter Schletti, an incompetent, to cancel a deed executed by plaintiff's ward to the defendant John Schudel on January 9, 1917, conveying two lots in the city of St. Paul for a consideration of $3,000 and to require Schudel to account to plaintiff for the rents of the property from the date of the deed to the date of the trial of the action. The deed was attacked on the ground that when it was executed Schletti was advanced in years, weak of mind, infirm of body, and incapable of attending to the transaction of business, and that Schudel was his confidential agent and adviser, had acquired great influence over him, and, taking advantage of his mental incapacity and the trust he reposed in him, obtained the deed for a grossly inadequate consideration. The action was tried by the court without a jury. The findings were that the allegations of the complaint upon which cancelation of the deed was sought were established by the evidence, and plaintiff was given the relief demanded. A motion for a new trial was made and denied, and an appeal taken from the order denying such motion.

A reversal of the trial court's order is sought solely upon the ground that the evidence does not sustain the findings. The evidence bearing upon Schletti's mental capacity at the time the deed was made fairly shows that he was a man 79 years old, living alone in a small house in St. Paul; that he had been a gardener by occupation, but for a number of years had done no work. The only property he appears to have owned was a small parcel of land in St. Paul, which he had leased, and a claim of about $4,000 against a deceased sister's estate, represented by a note and mortgage on the property which is the subject matter of this action. Witnesses testified that he was slow of speech, did not readily understand

business transactions, did little talking, and appeared to be simple-minded. When a business proposition was made to him, he would look and act as though he did not comprehend it, and was slow to grasp it, unless it was explained to him over and over again. He was forgetful and had been for a number of years prior to the making of the deed. He could easily be persuaded to assent to a business proposition made to him by anyone in whom he had confidence. He often had dizzy spells.

As to the relations between Schletti and Schudel, the evidence fairly shows that they had been acquainted for about 30 years and were friends, and that Schletti trusted Schudel; that the latter began to do some business for him in November, 1916, in connection with the settlement of the former's claim against the estate of his deceased sister; that he had been requested by Schletti to advise and assist him in the collection of this claim, and that he did so; that Schletti paid him $25 for his services; that Schletti obtained a deed to the property in question on December 15, 1916, in exchange for the $4,000 note and mortgage he held as already stated; that the lots covered by the deed had two good sized dwellings and a small two-room house upon them, all occupied by tenants; that Schudel went to these tenants and notified them that Schletti had become the owner of the property and that thereafter he or Schletti would come around and collect the rents. Schudel testified that the tenants refused to pay rent because the houses were in bad repair, and that he reported this to Schletti; that a short time thereafter the latter told him he was "tired of the property" and wanted "to sell it" and offered it to him, asking him how much he would pay for it. He further testified that he advised him to try to sell it to someone else, but to no avail, and that later on Schletti sent for him and again asked him to buy the property; that he finally offered $3,000 for it; that Schletti was satisfied with and accepted the offer and went to an attorney's office and had a deed prepared, which was executed on January 9, 1917, and conveyed the property to him.

The consideration stated in the deed was $3,000, and was made up of $500 in cash and $2,500 in a note payable in six years, bearing five per cent interest, and secured by a mortgage on the property conveyed. The deed was not recorded until June 25, 1917. After it was executed, Schudel collected the rents, paid the taxes and made some repairs and

improvements on the property. The findings as to the amounts to be charged against or credited to him under these heads are not questioned by any assignment of error. At the time the deed to Schudel was made the property conveyed was reasonably worth $4,500. If Schletti had kept the property his net income therefrom would have been $400 or $450 per annum.

In June, 1917, Mrs. Nitz, Schletti's sister-in-law, applied to the Ramsey county probate court for her appointment as his guardian on the ground that he was mentally incompetent to manage his property. The plaintiff bank was appointed guardian, after a hearing upon the question of his mental capacity had at that time in that court. About the time the guardian was appointed, under some arrangement not disclosed by the evidence, Schletti went to live with Schudel and continued to live with him up to the time of the trial. Schudel testified that he was willing to furnish Schletti with a home as long as he lived, but there was no written agreement between them whereby he bound himself to do so. Later on a letter was written by his attorney to the guardian asking for payment for Schletti's board.

As to the value of the property, the testimony is of such a nature that the court might have found it to be worth anywhere from $3,500 to $4,750. After plaintiff was appointed guardian, it proposed to Schudel that, if he would pay $750 more for the property than he had already paid, no attack would be made upon the transaction between him and Schletti. Schudel declined to pay anything more, and this action followed. Before commencing the action plaintiff notified Schudel that it would return to him his note and mortgage of $2,500, and would pay any sum which might be due him after charging him with the rents he had received and crediting him with the taxes he had paid and the reasonable value of any repairs or improvements he had made upon the property.

From the foregoing statement of the facts which the evidence fairly tended to establish, we are of the opinion that the trial court was clearly right in reaching the conclusion that Schletti was not mentally competent to comprehend the nature and effect of the transaction between him and Schudel which resulted in the conveyance of the property to the latter, and that the facts and circumstances and the inferences to be drawn

therefrom, warranted the court in finding that Schudel exercised undue influence over Schletti when he obtained the deed from him. The principles which control such a case as we have here have been frequently stated and applied in previous decisions of this court. It is unnecessary to restate them.

The rule whereby we are to determine the question whether the findings of a trial court are supported by the evidence in a case involving the questions presented here has been well stated as follows: "Findings will not be overturned unless the evidence is clearly and palpably against the conclusion of the trial court." Butler v. Badger, 128 Minn. 99-103, 150 N. W. 233, 234. Tested by this rule, we think it clearly appears from the foregoing summary of the evidence that the findings in this case cannot be overturned. The conclusions reached by the trial court are in harmony with the principles recognized by our own decisions. Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287; Thill v. Freiermuth, 139 Minn. 78, 165 N. W. 490. Every case of this character must be determined very largely by a consideration of its special facts and the conclusions or inferences to be drawn from them. No two cases are exactly the same. Different inferences may be drawn legitimately from the same state of facts by different minds.

The Thill case is an illustration. On the first appeal in that case this court reversed the lower court on the ground that the evidence did not sustain a finding that a deed was procured by undue influence. 132 Minn. 242, 156 N. W. 260. On a second appeal after a new trial had been had, which resulted in the same findings, it was held that the evidence, which was not the same as on the first trial, sustained the findings. 139 Minn. 78, 165 N. W. 490.

Much must be left to the sound judgment of the trial court. We ought not to interfere with the exercise of that judgment unless it is manifestly wrong. This is a case where the trial court might well find that a simple-minded old man had parted with the greater portion of his property for an inadequate consideration and had thereby materially reduced his income for the remainder of his life; and that the person who obtained the property was his trusted adviser, who, taking advantage of the confidence reposed in him, so dealt as to benefit himself

materially at the expense of one who was unable to protect his own interests in a business transaction such as was had between them.

The order appealed from is affirmed.