# HELEN M. PICHA v. CENTRAL METROPOLITAN BANK.[1]

December 12, 1924.

No. 24,212.

**Question for jury.**

1. In this, an action to procure a cancelation of a contract on the ground of fraud, *held* that the evidence made a question for the jury as to whether the defendant bank's assistant cashier acted for the bank in the negotiations for the sale of certain mortgages to the plaintiff.

**Evidence sufficient to support finding of fraud.**

2. The evidence was sufficient to justify a finding that the contract in question was induced through defendant's fraud and deceit.

**Charge was correct.**

3. The charge to the jury, in submitting certain specific questions, was clear and correctly stated the law applicable.

**Admission of evidence.**

4. There was no reversible error in the rulings upon the admissibility of testimony.

**Judgment sustained by evidence.**

5. The proofs support the findings and order for judgment.

AFTER REARGUMENT.

May 1, 1925.

**Assistant cashier had apparent authority to act for bank.**

6. On reargument, the original decision is adhered to, particularly upon the ground that the evidence warrants a finding of apparent authority in an assistant cashier to sell the mortgages in question as the property of the bank.

Action in the district court for Ramsey county to rescind the purchase of certain notes and mortgages and to recover $5,000.

[1]Reported in 201 N. W. 315, 203 N. W. 617.

The case was tried before Olin B. Lewis, J., and a jury which answered in the affirmative the question whether defendant entered into a contract with plaintiff for the sale of the notes and securities described in the complaint, and the question whether such contract was induced by its deceit and fraud. The court then made findings, adopting the verdict of the jury, and ordered judgment for the amount demanded. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Christofferson, Walsh, Christofferson & Jackson,* for appellant.

*McMeekin, Quinn & Swan,* for respondent.

QUINN, J.

Defendant is a banking corporation, organized under the laws of Minnesota, and is doing a general banking business at Saint Paul, Minnesota. The plaintiff and William Picha are husband and wife. At the time of the commencement of this action, the husband brought a similar action against the defendant. The two causes were tried below as one action and submitted on the same record. Certain issues were submitted to a jury, and the court made findings and ordered judgment against the defendant and in favor of the plaintiff in each case. From an order denying its motions for judgment and, if they be denied, then for a new trial in each case, defendant appealed.

A. E. Lund was teller in the defendant bank for a number of years. About six years ago he became assistant cashier therein. As assistant cashier he did not handle currency, make loans or sign instruments for the bank. He had no authority so to do. Otherwise, his routine work was similar to that of the cashier. The bank did not sell stocks or bonds, but purchased them for its own use.

Plaintiff and her husband were customers and depositors of the defendant bank and had savings deposit accounts therein. They became acquainted with Lund, while he was a teller in the bank, and generally transacted their business with the bank through him. The Williston State Bank of Williston, North Dakota, was a de-

positor and correspondent of the defendant bank and dealt in farm mortgages on lands in Williams and McKenzie counties, North Dakota.

In January, 1920, the Williston bank sold and assigned to the plaintiff, three mortgages: One for $3,000 given by Peter Syverson and wife to the Williston bank, March 22, 1919, on 320 acres of land in Williams county; one for $1,200 given by John T. Adyman to the same payee, May 5, 1919, on 160 acres in the same county; and one for $800 given by Ella McGinnis to the same payee on December 6, 1919, on 120 acres in McKenzie county. The negotiations for the sale of these mortgages were made through Lund. The plaintiff gave checks to Lund on her savings account, which were, by him, deposited in the defendant bank to the credit of the Williston bank. Lund testified that he made debit slips against the Williston bank account to cover his commission in the transaction and that the defendant bank received no part of the same.

By this action, plaintiff seeks to have the contract which she claims to have entered into with the defendant, through its assistant cashier, canceled on the ground of fraud. She contends that Lund, acting as an officer of the bank, took the initiative in the transaction; that he advised her to invest her money in the mortgages; that the bank had good mortgages for sale; that the bank was back of them, and that she could get her money back from the bank at any time she wished by simply bringing the mortgages in, etc.

The defendant insists that the testimony shows conclusively that, throughout the negotiations for the mortgages in question, Lund acted only in his own individual capacity and that the defendant bank was in no manner interested in, or connected with the transaction.

In disposing of the case, the trial court submitted to the jury two questions, which were answered as follows:

1. Did defendant bank enter into the alleged contract with plaintiff for the sale to her of the notes and securities described in the complaint? A. Yes.

2. Was such contract between plaintiff and defendant, for the sale of said notes and securities, induced or procured through de-

fendant's fraud and deceit as alleged in the complaint? A. Yes.

In submitting the matter, the trial court instructed the jury, to which appellant takes exception as follows:

"Then you would come to the question of the alleged fraud and deceit of Lund, as alleged, and the first inquiry upon the question of fraud and deceit would be this: Did Lund, as such representative of the defendant bank, falsely represent to each of these plaintiffs that these notes were good, that the mortgages were ample and sufficient security, that the Central Metropolitan Bank owned them, that if plaintiffs should become dissatisfied, the defendant Central Metropolitan Bank would repurchase them and would give them back their money—these are the representations that were charged in each one of these cases—if made, they constitute material facts, and if they were so made and were false and made with the intention of deceiving these plaintiffs and the plaintiffs relied upon them and believed them and acted upon these representations and entered into a contract to purchase these notes and securities and thereby subjected themselves to loss or damage, then such conduct on the part of the representative of the bank, Mr. Lund, acting in his official capacity, would be the act of the bank, and would constitute such fraud and deceit as would render the contract for the sale of these securities voidable at the election of plaintiffs when coming into Court and asking to have their contract set aside."

"Now it is the law of this state that a false representation as to the quality, condition or other matters affecting the value of property of which the person to whom representation is made is in contemplation of a purchase, is a false representation as to a material fact, and if you should find that Lund, speaking for and representing the bank, for which he was assistant cashier, by its authority, made the representations intending to create a belief in the minds of the plaintiffs that this bank would do the things which he represented it would do, in repurchasing these securities if the plaintiffs should become dissatisfied with them, and pay them their money back, and if the representations he so made were so understood by the plaintiffs as asserting a fact that the bank would,

on demand, repurchase these notes or refund the money for the securities which they had paid, then if you find that these representations were fraudulently made, and if these representations were relied upon by these plaintiffs in making this purchase, it would constitute a fraud and deceit which would justify the plaintiffs in seeking the relief they ask for in this case."

The two questions were proper ones to be submitted to a jury under the issues as made by the pleadings and as affected by the evidence. The issue was clearly and correctly submitted to the jury and its findings thereon are supported by the evidence. The testimony, given at the trial by the respondents, as to conversations had with the vice president and cashier of the bank, appears to have taken place, if at all, both before and after the sale and transfer of the securities in question, the testimony was properly received as bearing upon the question whether Lund was acting for the bank in the transaction.

In its decision the court found, as a fact:

"2. That for many years prior to the purchase of the notes and mortgages herein described, plaintiff had been a depositor and customer of the defendant, and as such defendant acted in a fiduciary capacity in its relations for plaintiff. That the plaintiff has little knowledge of the security furnished by farm mortgages or other securities offered for investment, but during all of said time had full confidence in and relied upon the defendant, its officers and agents, for advice and direction in the making of investments."

True, an action for rescission assumes the existence of a contract between the parties capable of being rescinded. In such a proceeding a pertinent inquiry is as to the contract claimed to have been had between the parties, its terms, conditions and all other matters in connection therewith. It is urged on behalf of appellant that the contract under consideration was one of sale; that the defendant sold certain mortgages to the plaintiff and that she paid it therefor. It is claimed by respondent that the proofs show conclusively that no such contract ever existed between plaintiff and defendant. It appears conclusively that the appellant did not own

the mortgages, that it had no interest therein, nor does it appear that it received any profit from the transaction, but it does appear that the negotiations were carried on through appellant's assistant cashier, in its banking house; that $5,000 was transferred from plaintiff's savings account to the credit of appellant's correspondent at Williston; that other mortgages, held by the same bank at Williston, had been negotiated in much the same manner. The plaintiff testified that in entering into the transaction she supposed that Lund was acting only as an official of the bank and that the deal was being made through the bank, upon which she placed full reliance.

If it be a fact, as the trial court found, that Lund advised the plaintiff that it was not wise for her to retain so much money, earning little or nothing, and to purchase certain farm mortgages, then owned by it, and the bank assured her, through its assistant cashier, that such mortgages were good and afforded sufficient security for the payment of the notes covered thereby; that if, at any time, she was dissatisfied the bank would take the mortgages off her hands and pay her therefor; and that, in reliance thereon, plaintiff purchased such mortgages and notes; and that such statements and representations, so held out to her, were false and untrue; and that, in fact, the defendant was then acting for the Williston bank and as plaintiff's financial agent in a dual capacity; and that plaintiff accepted the same in ignorance of such facts and relied entirely upon her faith in the defendant, then, such statements and representations would constitute a fraud upon the plaintiff sufficient to entitle her to a rescission of the contract.

In a transaction like the one under consideration, where there exists a fiduciary relationship between the parties, accompanied by acts tending to establish misrepresentations and undue influence, such a condition may amount to such deceit as will, of itself, warrant a rescission of a contract. Nelson v. Berkner, 139 Minn. 301, 166 N. W. 347. Such a fraud includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed and are injurious to another, or by

which undue advantage is taken of another. Banque Franco-Egyptienne v. Brown, 34 F. 162.

Fraud, like any other fact, is not always susceptible of direct proof and often can be established only by circumstantial evidence. In such cases resort may be had to all of the surrounding facts and circumstances. If entirely innocent in the present case, it would seem that the books and records of the bank would have been forthcoming when asked for; nor was Mr. Westby, who was connected with the Williston bank and later connected with the defendant bank, called to explain the transactions at issue.

At the trial, testimony was received without objection to the effect that the defendant's assistant cashier stated and represented to respondents that the bank was back of the mortgages and that, if at any time they wished to have back their money, the bank would take the mortgages back and return their money in full; that all they had to do was to bring in their mortgages and receive their money. If such was the agreement between the parties, and the findings of the trial court are to that effect, then the right to rescind and receive back the money paid for the mortgages rested with the respondent. The right of rescission awaited the election of the purchaser to turn back the mortgages. The obligation to receive back the mortgages and return the money to the purchaser was not fixed or determined at the time of the sale. Under these circumstances, it was not fatal to respondent's right to rescind that the proofs failed to show the inadequacy of the mortgages as security to the notes.

Affirmed.


WILSON, C. J. and STONE, J. (dissenting.)
We dissent.


On May 1, 1925, the following opinion was filed:


PER CURIAM.
On reargument we have given further and attentive consideration to the whole case and, putting aside for the moment all other ques-

tions, consider that the evidence made an issue as to whether Mr. Lund had apparent or ostensible authority to sell the mortgages for the bank in such fashion as to make it liable as a party, the seller, on the contract of sale. In the evidence supporting that conclusion is the testimony of Mrs. Picha that Mr. Swenson, defendant's cashier, assured her, in the bank, in response to a question propounded by her to both Mr. Swenson and Mr. Lund, that the mortgages were all right and that "the bank wouldn't sell them to you if they were not all right," that "they (defendant) would do all of the collecting of interest * * * and if we wanted to turn them back at any time that they would take them right off our hands."

The jury was told that if defendant's "managing and executive officers" had permitted Lund to sell the mortgages upon the representation that they were the property of defendant and that as assistant cashier he was selling them for defendant, they might then consider the "alleged fraud and deceit of Lund." On the question of apparent authority as distinguished from actual authority, no further or different charge was asked for at the time. The issue was thus litigated and submitted and has been disposed of adversely to defendant by the verdict and findings and there is nothing warranting interfering with the result or the method whereby it was reached.

Attentive consideration has been accorded all of the arguments advanced by appellant. The point that if there was no contract between plaintiffs and defendant there can be no recovery based on a rescission, is of course sound, for, if there was no contract, there was nothing to rescind. But, if there was a contract, it is no obstacle to rescission that it was made binding on defendant by an agent having apparent rather than actual authority.

The issue of Lund's agency having been resolved against defendant, the finding of a contract makes clear the way to rescission by plaintiffs, there being evidence that they were induced to purchase the mortgages by representations which as to them, under the circumstances, might be considered fraudulent. The triers of fact have so determined and the record is such that the result must be considered final.