# WELLS-DICKEY TRUST COMPANY v. LEWIS A. LIEN AND ANOTHER.[1]

August 7, 1925.

No. 24,724.

**Finding sustained that defendant did not stand in fiduciary relation to plaintiff.**

Action to rescind the purchase of a tract of real estate and recover the money paid therefor. Plaintiff had the burden of proving that defendant stood in a fiduciary relation to her, or that he induced her to make the purchase by fraudulent misrepresentations. The court found against her on both propositions and the findings are sustained by the evidence.

Vendor and Purchaser, 39 Cyc. p. 1437.

[1]Reported in 204 N. W. 950.

See note in 37 L. R. A. 613.   See note in 9 A. L. R. 1058; 12 R. C. L. 232-234; 2 R. C. L. Supp. 1406; 5 R. C. L. Supp. 637.

Action in the district court for Big Stone county.   The case was tried before Flaherty, J., who ordered judgment in favor of defendants.   Plaintiff appealed from an order denying its motion for a new trial.   Affirmed.

*Murphy & Johanson*, for appellant.

*E. H. Grady, D. J. Leary* and *Cliff & Purcell*, for respondents.

TAYLOR, C.

This action was brought by Cora M. Cootey against Andrew D. O'Brien to rescind the purchase of an undivided one-third interest in a tract of 3,050 acres of Montana land and to recover the purchase price of $9,000 paid therefor.   Both parties died before the trial of the action and the representatives of their respective estates were substituted in their stead.   For convenience we shall use the terms plaintiff and defendant whether referring to the original parties or to the present parties.

The Cootey family and the O'Brien family were intimate friends. The Cooteys resided in Minneapolis, the O'Briens at Graceville.   Mr. O'Brien was president of the Graceville State Bank and also the president and managing officer of the O'Brien Land Company, and a man of large experience in the land and banking business and a successful dealer in lands and securities.   Mr. Cootey died in April, 1911, leaving a will in which he named Mr. O'Brien as co-executor with his wife.   The business affairs of the estate were apparently managed mainly by Mr. O'Brien during the period of administration.   The probate proceedings were completed and the estate closed in 1913, at which time a considerable amount of property passed to Mrs. Cootey, part of which was in the form of farm mortgages and money.   Thereafter a considerable part of her money was invested for her in farm mortgages by Mr. O'Brien, either personally or through the bank or land company of which he was president.

The complaint in substance alleges, among other things, that in

August, 1917, the defendant represented to the plaintiff that he had an opportunity to purchase 3,000 acres of land in the state of Montana; that such purchase would require more money than he cared to invest at that time; that he was willing that she should take a one-third interest in the purchase on equal terms with him which would require her to invest $9,000; that the land was worth a much larger sum and could quickly be sold at a profit; that, relying upon such representations and because of her full confidence in defendant, she agreed to purchase such one-third interest and that defendant should use $9,000 of her money then in his hands to pay for it; that plaintiff knew nothing about the land or its value; that, in fact, it was not worth over $5 per acre; that defendant did not purchase the land for a cash consideration, but without her knowledge exchanged some of his own property for it and retained her $9,000 himself; that he took title to the land in his own name and thereafter executed to her a deed of an undivided one-third interest in it; that, immediately after learning that defendant had acquired the land in a trade without parting with any money, she tendered a reconveyance of the interest conveyed to her and demanded the return of her $9,000; and that defendant refused to return it.

The answer admitted that defendant had acquired the land in exchange for other property, and had received from plaintiff $9,000 for the one-third interest therein which defendant had conveyed to her. It alleged that the property given in exchange for the land was of the value of $27,000; and that plaintiff made her purchase of her own volition with full knowledge of all the facts. It put in issue all the allegations of the complaint not expressly admitted.

The trial court found all the issues in favor of defendant and directed judgment dismissing the action on the merits. Among other things the court found that at the time of the transaction in question the reasonable cash market value of the land was in excess of the price paid for it by plaintiff; that plaintiff was a woman of experience in business matters and managed her estate herself through such agencies as she selected; that, although plain-

tiff and defendant were on friendly terms, no confidential or fiduciary
relationship existed between them; that the transaction in question
was in no way induced or brought about by means of any such re-
lationship; that there had been no violation of trust or confidence
nor exercise of improper influence by defendant; that defendant
did not conceal any material facts or information in relation to
the property nor make any false or fraudulent statements or repre-
sentations concerning it, but acted throughout in entire good faith
without taking or gaining any advantage or exercising any improper
influence over plaintiff.

Plaintiff contends that the findings are not sustained by the
evidence.

There is no evidence that defendant made any representations
whatever concerning the Montana land, or its value, or the manner
in which it was to be acquired or paid for. The record shows merely
that the land was conveyed to defendant in exchange for other prop-
erty by a deed dated November 3, 1917, pursuant to a contract
dated July 28, 1917; that pursuant to an oral agreement, apparently
made in August, 1917, the terms of which are not disclosed, de-
fendant, in accounting for the proceeds of certain mortgages which
he had collected for plaintiff, charged her with the sum of $9,000
on account of the Montana land, and on the same date, January
29, 1918, gave her a receipt for $9,000 received for an undivided
one-third interest in the Montana land, which receipt contained a
discription of the land and a statement that the title was in de-
fendant and that he agreed to convey the above interest to plaintiff
by warranty deed free from encumbrance at as early a date as pos-
sible, that these lands were encumbered by a mortgage which de-
fendant paid; and that he conveyed the undivided one-third interest
in the lands to plaintiff by a deed dated February 23, 1918.

The only attempt to spell out anything in the nature of repre-
sentations on the part of defendant is based on a letter written to
him by plaintiff's attorney on September 27, 1920. Defendant had
been ill with tuberculosis for several years, and in the latter part
of September, 1920, he went to Europe where he remained for some

months.  He died shortly after his return to this country.  In 1920, plaintiff wanted to get her money out of the Montana land and invest it in interest-bearing securities.  No sales had been effected and prices had slumped.  She assented to an attempt to sell for $20,000. On August 20, 1920, defendant made a proposition by letter to give her $6,500 in a second mortgage on Minnesota land for her interest in the Montana land.  On September 1, 1920, he made a second proposition by letter to buy her one-third interest for $5,000 or to sell her his two-thirds for $10,000.  These propositions were declined on her behalf by her attorney.  Defendant apparently took offense at certain statements, not in the record, made by the attorney to Mr. Lien, the secretary of the O'Brien Land Company, and, on September 17, 1920, wired plaintiff that his propositions were withdrawn, and that any insinuations she had made to her attorney concerning his treatement of her were resented and had no foundation.

On September 27, 1920, her attorney wrote defendant that all offers had been declined before receipt of the telegram; and then explained his conversation with Lien by saying that it was not based on statements made by plaintiff, but on his own inferences from the fact that the land had been taken in a trade, from the information he had obtained as to the price for which it had been sold in 1915 and 1916, and from the fact that he had been told by plaintiff that defendant had proposed "to let her in with" him on the purchase of the land and had said that its value "was such that a quick profit could be made."  This letter reached Graceville after defendant had left for Europe.  Mr. Lien forwarded it to him at Paris; whether he received it does not appear; he never replied to it.  Plaintiff insists that the failure of defendant to reply "makes the letter itself evidence of the facts it purports to state;" and cites Sonnesyn v. Hawbaker, 127 Minn. 15, 148 N. W. 476, as supporting this proposition.  That case merely states:

"Where a demand is made upon a party under such circumstances that he would naturally deny if he did not assent, the demand and failure to reply may be received as evidence in the

nature of an admission tending to prove the justice of the demand."

The facts, which we have probably set out with unnecessary fullness, show that this letter does not come within the limited operation of the principle there stated. All negotiations had been terminated. No demand was made. Apparently the inferences which had been resented by defendant were repeated. Assuming that he received this letter in Paris, the fact that he made no reply did not make it evidence against him. 10 R. C. L. 1150; Kumin v. Fine, 229 Mass. 75, 118 N. E. 187, 8 A. L. R. 1161, and note.

Plaintiff attacks the finding that the market value of the land at the time she purchased it exceeded the price she paid as not sustained by the evidence. Plaintiff presented evidence to the effect that the attempts to farm such lands had been failures, that the only use made of them was as a range for sheep, and that they had no appreciable market value. Defendant presented evidence to the effect that large quantities of such lands were purchased in the years 1915, 1916 and 1917; that many settlers located upon them in those years; and that the selling price in 1917 ranged from $10 to $20 per acre. This evidence is sufficient to sustain the finding and it must stand.

The court found that no fiduciary relation existed between plaintiff and defendant. Plaintiff contends that the evidence conclusively establishes that a fiduciary relation existed between them. In support of this contention plaintiff cites the fact that they had been friends for many years; that defendant had been co-executor with her under her husband's will; and that both before and during the time of the transaction in question he made investments in farm mortgages for her as shown by the correspondence in evidence and by the testimony of Lewis A. Lien, vice president and secretary of the land company. The fact that they were friends created no fiduciary relation, although it might properly be taken into consideration in determining the effect to be given to other facts. The administration of the estate of plaintiff's husband had been completed and defendant's duties as executor had terminated nearly four years before this transaction. Some of the mortgages were

executed directly to plaintiff; others were taken by the bank or by the land company and subsequently transferred to her. The business was transacted almost wholly by correspondence, the greater part of which was with Mr. Lien. The correspondence is voluminous and is supplemented and explained to some extent by the testimony of Mr. Lien. It discloses that plaintiff was a woman of business ability; that she kept her uninvested funds and her securities in her own possession; that a full detailed statement of each proposed investment was made to her and was subject to her approval; that the notes, mortgages, abstract of title and insurance policies pertaining to each transaction were sent to her as soon as the same was completed; that as coupons matured she forwarded them to the bank for collection; that, when a mortgage was to be paid, she executed a satisfaction and forwarded it with the other papers; that the amounts paid were usually wholly or partly reinvested in other mortgages; that, if the amount paid was less than the amount of the new mortgages, she forwarded the additional amount necessary to cover them; that, if the amount paid was more than the amount required for the new mortgages, the balance was remitted to her; and that each transaction was closed by itself as soon as completed and the papers and money, if any, sent to her. The court could legitimately conclude from the evidence that plaintiff retained full control over the matter of making these investments, and that she did not give defendant the control or management of her business, but merely employed him and the bank and the land company as her agents in procuring such mortgages as she desired to take. She made other investments apparently without consulting defendant.

It is the province of the trial court to draw the inferences of fact and, "the findings will not be overturned unless the evidence is clearly and palpably against the conclusion of the trial court." Butler v. Badger, 128 Minn. 99, 150 N. W. 233.

The purchase of the Montana land had no connection with any business which defendant had previously transacted for plaintiff. The burden was upon plaintiff to prove that a fiduciary relation

existed between them at that time and in respect to that matter. Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257. The evidence measured under the rules governing such cases furnishes no sufficient ground for saying that the learned trial court reached an erroneous conclusion, and its findings must stand. Peavey v. Wells, 139 Minn. 174, 165 N. W. 1063; In Re Estate of Malchow, 143 Minn. 53, 172 N. W. 915; Cowee v. Cornell, 75 N. Y. 91, 31 Am. Rep. 428; McCarthy v. White, 21 Cal. 495, 82 Am. Dec. 754; Baugh v. Houston (Tex. Civ. App.) 193 S. W. 242; 12 R. C. L. 234.

No misrepresentations having been made and no fiduciary relation existing, the action necessarily fails.

Plaintiff assigns as error several of the rulings admitting or excluding testimony. We have examined all of them, and find none in which the court exceeded its discretion, and none requiring special mention.

Order affirmed.