**In the Matter of the Trust Created by Harlan D. BOSS by Agreement dated August 6, 1981.**

Nos. C3-92-94, C3-91-2269 and C9-91-2468.

Court of Appeals of Minnesota.

June 23, 1992.

Review Denied Aug. 11, 1992.

Joe A. Walters, Anne Meredith–Will, O'Connor & Hannan, Minneapolis, for appellant.

Jeffrey F. Shaw, Cole Oehler, Briggs and Morgan, St. Paul, for respondent.

Considered and decided by NORTON, P.J., and LANSING and DAVIES, JJ.

## OPINION

DAVIES, Judge.

Appellant John P. Vitko challenges (1) the trial court's jurisdiction over a trust; (2) the admission into evidence of a disciplinary action against Vitko; (3) the finding of fraud by Vitko; (4) the finding that fees Vitko charged to the trust were excessive and unreasonable; (5) the trial court's denial of Vitko's attorney fees; and (6) the trial court's award of fees to an expert witness for preparation outside the courtroom before testimony. We affirm.

## FACTS

Harlan Boss, an interior designer, owned and operated Boss Interiors with his lifetime partner, Gene Dawley, who was also Boss's attorney-in-fact. After Dawley's death in 1980, Boss asked John P. Vitko, who had been his personal attorney since 1968, to be his attorney-in-fact.

Between 1970 and 1980, Vitko prepared two wills and a codicil for Boss. Because Boss feared that friends and relatives might pressure him into making gifts or including them in his will, Vitko recommended that Boss place all of his assets in a trust, naming Boss as lifetime beneficiary, and providing a charitable remainder. On August 6, 1981, when Boss was 73 years old, unmarried, and without children, Boss executed just such a revocable trust agreement, prepared by Vitko. The agreement named Vitko as trustee and Vitko's wife as the successor trustee. All of Boss's assets were transferred to the trust, including his 33–room house, tangible personal property estimated at $750,000, 20 percent of the stock of a manufacturing business owned by the Boss family, and his own interior design business.

In the fall of 1990, Boss confided to a cousin and niece that he had lost confidence in Vitko. Boss was unable to tell them what the disposition of his property was, however, and he had no copies of his trust agreement or will. In November 1990, Boss obtained new counsel and revoked his living trust and Vitko's power of attorney.

At a November 10, 1990, meeting, Vitko was told of the revocation of the 1981 trust agreement but, instead of accepting the revocation, Vitko presented Boss with a document entitled "First Amendment to Trust Agreement of Harlan D. Boss" dated May 27, 1982, which Vitko had drafted and which purported to make Boss's trust irrevocable. Section 6.01 of the trust originally provided:

> *6.01 Appointment of Trustees.* While I am living and legally competent, I reserve the power to appoint additional trustees at any time or to remove any trustee then acting hereunder, in my sole discretion. * * * If John P. Vitko shall fail to qualify or cease to serve, Mary Ann Vitko shall become a cotrustee hereunder, replacing him.

In addition to making the trust irrevocable, the amendment deleted the first sentence of paragraph 6.01 and substituted the following:

> While I am living and legally competent, my Trustee may appoint additional trustees at any time or remove any trustee then acting hereunder, in his sole discretion.

Vitko admitted that he never suggested that Boss seek outside legal counsel regarding amendment of the trust, nor did he recommend a less drastic alternative to an irrevocable trust.

In supervising preparation of federal and state income tax returns, Vitko did not include fiduciary returns, which the Internal Revenue Code requires for an irrevocable trust, nor did he tell accountants that the trust was now irrevocable. No gift tax return was filed in 1982, as required if the trust was irrevocable, and Vitko never provided federal and state auditors with documentation that the trust had been made irrevocable. Further, when taking out a second mortgage on Boss's home in 1988, Vitko filed the revocable trust agreement with the county recorder's office, but did not include the amendment making it irrevocable.

From 1981 to 1985, prior to his termination from the Dorsey & Whitney law firm in March of 1985, Vitko charged the

Harlan Boss Trust fees which averaged $30,000 per year. Since April of 1985, Vitko, now a solo practitioner, has charged the Harlan Boss Trust an average of $90,000 in fees per year. Since its inception, Vitko has charged the trust $541,000 in fees, the trust's single largest expense.

During his years as trustee, Vitko never provided Boss with a formal written accounting. Rather, he would make informal oral accountings to Boss, often over lunch and cocktails at a restaurant. At these weekly meetings, Vitko would have Boss sign approvals for Vitko's fee statements, agency authorizations, oral accountings, and other items.

In January 1991, Boss petitioned the court under Minn.Stat. § 501B.16 (1990) for an accounting, construction of the trust agreement, and a declaration that the amendment to the trust was void. After an initial hearing on February 14, 1991, the court assumed jurisdiction and directed Vitko to file a verified accounting.

After a hearing on the accountings, the court ruled that the irrevocable amendment was void ab initio and that Boss's subsequent revocation of the trust was effective, based on a finding that Vitko committed fraud by concealing from Boss the existence and effect of the irrevocable amendment. The trial court also ordered Vitko to pay any attorney fees incurred in defending the trust, to repay $360,000 in excessive and unreasonable trustee fees, and granted respondent's motion for $8,546 in expert witness fees to be paid by Vitko as costs and disbursements. This appeal followed.

## ISSUES

I. Did the trial court err in finding that appellant committed fraud by concealing the existence and effect of the first amendment to the trust?

II. Did the trial court have jurisdiction under Minn.Stat. § 501B.16 (1990) to declare void the first amendment, making the living trust irrevocable, and to validate revocation of the trust?

III. Did the trial court abuse its discretion in admitting into evidence a prior disciplinary action against appellant?

IV. Did the trial court abuse its discretion in finding excessive the fees appellant charged to the trust and in ordering appellant to reimburse $360,000?

V. Did the trial court abuse its discretion by refusing to allow appellant to pay out of the trust the attorney fees he incurred in defending the trust?

VI. Did the trial court abuse its discretion in awarding expert witness fees to respondent in the amount of $8,546?

## ANALYSIS

### I.

Vitko alleges that there was no evidence to support the trial court's finding of fraud. In reviewing the findings of the trial court, where the action was tried without a jury, this court is bound by the standards set forth in Minn.R.Civ.P. 52.01:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Nondisclosure may constitute fraud where there is a duty, either legal or equitable, to disclose a certain fact. *Richfield Bank and Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976). In *Klein v. First Edina Nat'l Bank*, 293 Minn. 418, 196 N.W.2d 619 (1972), the court summarized circumstances where the duty to disclose material facts to another may arise; one is relevant to this case:

> (c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts. *See e.g., Wells–Dickey Trust Co. v. Lien*, 164 Minn. 307, 204 N.W. 950 (1925).

*Id.* at 421, 196 N.W.2d at 622.

As attorney, trustee, and friend of Boss, Vitko stood in a fiduciary and confidential capacity of the highest trust and confidence. *See Colstad v. Levine*, 243 Minn. 279, 286–87, 67 N.W.2d 648, 654

(1954). Where an attorney engages in a transaction with a client in which his private interest conflicts with his client's interest, the attorney has

> the burden of proving that he has been absolutely frank and fair with his client and has taken no advantage of the [confidential relationship].

*Id.* at 287, 67 N.W.2d at 654; *see also In re Lee's Estate,* 214 Minn. 448, 457–59, 9 N.W.2d 245, 250 (1943) (places similar burden on a trustee whose interest conflicts with the trust).

Vitko contends that there is no evidence to support a finding that he falsely represented a past or existing material fact because Boss could not remember any of the transactions and no other witness testified to any representations by Vitko.

While this is true, the circumstantial evidence that Vitko concealed the existence and effect of the irrevocable amendment weighs heavily against respondent's self-serving testimony that Boss was aware of the irrevocable amendment and its effect. *See, e.g., Picha v. Central Metro. Bank,* 161 Minn. 211, 216–17, 201 N.W. 315, 317 (1924).

> Fraud, like any other fact, is not always susceptible of direct proof and often can be established only by circumstantial evidence. In such cases resort may be had to all of the surrounding facts and circumstances.

*Id.* at 217, 201 N.W. at 317.

The testimony of respondent's expert, which the court found credible, indicates that the irrevocable amendment was extremely favorable to Vitko. The expert noted that Vitko was a beneficiary with substantial economic interests and had total control over all of Boss's assets without fear of discharge.

■ In addition, by his own admission, Vitko failed to recommend that Boss seek outside legal counsel regarding the amendment making the trust irrevocable. Such a failure violates Rule 1.8(c) of the Minnesota Rules of Professional Conduct and is unethical. *See In re Estate of Reiland,* 292 Minn. 460, 462, 194 N.W.2d 289, 290 (1972) ("[P]rofessional honor dictates that * * *

[a] will be prepared by someone other than the beneficiary.").

The circumstances surrounding Vitko's drafting and treatment of the amendment support the trial court's finding that Vitko concealed from Boss the existence and effect of the amendment.

■ Moreover:

Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relationship, whereby one in whom confidence was reposed, or who possessed controlling influence over the other, obtained benefits without consideration, or for an inadequate consideration. The onus is on a person obtaining such benefits to show that he acted righteously.

*Village of Burnsville v. Westwood Co.,* 290 Minn. 159, 166, 189 N.W.2d 392, 397 (1971) (quoting 8 Dunnell Dig. *Fraud* § 3833 (3d ed.)).

■ This case fits squarely within circumstances requiring a presumption of fraud. Other than his own self-serving testimony, Vitko provided no support for his position that Boss executed the documents only after full and frank disclosure.

Vitko argues that even if he was a potential beneficiary under the trust, his behavior should not be branded as fraud where he had not yet exercised his discretion as trustee to award himself property under the trust.

■ We hold, however, that the presumption of fraud arises from drafting a document in which the drafting attorney or the attorney's family has a beneficial interest. Immediate benefit is not required for a breach of fiduciary duty. Breach occurs when the fiduciary creates a situation in which he may later benefit; the conflict between the fiduciary's interests and those of the client exists the moment the power is created.

II.

■ Vitko contends that the trial court lacked jurisdiction to declare the amend-

ment to the trust, making it irrevocable, void and to remove Vitko as trustee.

Minn.Stat. § 501B.16 (1990) provides, in part, that

a person interested in the trust may petition the district court for an order:

\* \* \* \* \* \*

(8) to require a trustee to account;

(9) to remove a trustee for cause;

\* \* \* \* \* \*

(19) to redress a breach of trust.

In addition, Minn.Stat. § 501B.24 (1990) states that a district court has jurisdiction in rem, once it has assumed jurisdiction of the trust. Respondent petitioned for an accounting of the trust and other relief in accordance with Minn.Stat. § 501B.16. The petition included requests for declarations that the irrevocable amendment was void ab initio and that Boss's subsequent revocation of the trust was valid. Accordingly, the trial court assumed jurisdiction in rem when it ordered Vitko to account.

The trial court's finding of fraud by Vitko allowed it to redress the breach of trust under Minn.Stat. § 501B.16(19); this enabled the trial court to declare the amendment void.

### III.

■ Vitko argues that the trial court erred in admitting into evidence the public reprimand of Vitko.

The question of whether to admit or exclude evidence rests within the broad discretion of the trial court and its ruling will not be disturbed unless it is based on an erroneous view of the law or constitutes an abuse of discretion.

*Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn.1990).

■ In cases involving fraud

evidence is liberally admitted and may take a wide range. Evidence of facts logically tending to throw light on the issue is admissible. The trial court has a large discretion.

*Estate of Jones by Blume v. Kvamme,* 430 N.W.2d 188, 194 (Minn.App.1988) (quoting *Watson v. Gardner,* 183 Minn. 233, 237,

236 N.W. 213, 214 (1931)), *rev. granted on unrelated issues,* 449 N.W.2d 428 (Minn. 1989).

Minn.R.Evid. 608(b) provides that

[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, \* \* \* may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness \* \* \* concerning the witness' character for truthfulness or untruthfulness.

■ The evidence admitted by the trial court, over objection, pertained to Vitko's public reprimand under Rule 15 of the Minnesota Rules of Professional Responsibility. In 1984, after learning that he was to be terminated from his law firm, Vitko concealed receipt of a bonus check, which he was obligated to turn over to the law firm. *See In re Disciplinary Action Against Vitko,* 467 N.W.2d 605, 606 (Minn. 1991).

Evidence of Vitko's public reprimand regarding concealment and an intentional failure to disclose income is certainly probative of Vitko's untruthfulness and bears on the issue of his credibility as a witness. Thus, the trial court did not abuse its discretion in permitting cross-examination of Vitko regarding his public reprimand.

### IV.

■ "The allowance of reasonable compensation to a trustee for his services lies within the discretion of the trial court." *In re Trusts of Dwan,* 371 N.W.2d 641, 642 (Minn.App.1985), *pet. for rev. denied* (Minn. Oct. 18, 1985).

Vitko claims that the trial court erred in determining that Vitko's fees were unreasonable and in requiring Vitko to repay $360,000.

■ Where a trustee has committed a breach of trust, a court may deny compensation, reduce compensation, or allow full compensation. *Restatement (Second) of Trusts* § 243 (1959). These options arise from the trustee's failure to render servic-

es properly. *Id.* at comment a. Similarly, an attorney, or any fiduciary, may be denied compensation for breaching his fiduciary duties to his client. *Rice v. Perl,* 320 N.W.2d 407, 411 (Minn.1982) (compensation may be denied even if it cannot be proven that the fraud was intentional).

In the present case, the trial court was justified in reducing Vitko's fees based on the finding of fraud and the existence of a conflict of interest.

## V.

The trust agreement provides

[w]ithout limiting the generality of their authority, [the trustees] may employ legal counsel, accountants and investment counsel. In all cases, they may pay reasonable compensation.

August 6, 1981, Trust Agreement, Article 6.04(15). In addition, Minn.Stat. § 501B.11 (1990) allows a trustee to employ attorneys to advise or assist in the performance of the trustee's duties. Under Minn.Stat. § 501B.81, subd. 28 (1990), a trustee is authorized to

defend actions, claims, or proceedings for the protection of trust assets and of the trustee *in the performance of duties.*

(Emphasis added.)

Accordingly, Vitko claims the trial court erred in refusing to charge the trust for attorney fees Vitko incurred in defending the accounting.

The determination of whether or not attorney fees will be chargeable to the trust must be left to the sound discretion of the trial court. *In re Great N. Iron Ore Properties,* 311 N.W.2d 488, 492 (Minn.1981) (quoting *In re Atwood Trust,* 227 Minn. 495, 501, 35 N.W.2d 736, 740 (1949)). "Where the trustee has acted in bad faith or has been guilty of fraud * * * he may be denied attorneys' fees." *In re Freeman's Trust,* 247 Minn. 50, 56, 75 N.W.2d 906, 910 (1956); *see also Kronzer v. First Nat'l Bank of Minneapolis,* 305 Minn. 415, 430–31, 235 N.W.2d 187, 196 (1975) (trustee not allowed to recover attorney fees where no benefit was rendered to the trust).

The trial court was within its discretion in charging attorney fees to Vitko personally where the trial court concluded that Vitko had engaged in fraud with respect to the trust.

## VI.

Vitko argues that the trial court erred in granting Boss's motion to allow expert witness fees in the amount of $8,546. Vitko contends that the trial court's award of expert witness fees exceeded the amount permissible under Rule 11 of the District Court Code of Rules.

A reviewing court should not disturb allowance of expert witness fees in the absence of abuse of discretion. *Carpenter v. Mattison,* 300 Minn. 273, 280, 219 N.W.2d 625, 631 (1974). Rule 11 provides in pertinent part:

[T]he clerk may tax $300.00 per day for an expert witness fee as a disbursement in a civil case, *subject to increase or decrease by a judge on appeal. * * * No allowance shall be made for preparation or in conducting of experiments outside the courtroom by the expert.* The judge in setting the fee on appeal is governed by the provisions of M.S.A. Sec. 357.25.

(Emphasis added.) Minn.Stat. § 357.25 (1990) allows a judge to grant expert witness fees that are just and reasonable.

This court, in *Mohwinkel v. City of North St. Paul,* 357 N.W.2d 174 (Minn. App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985), examined Rule 11's prohibition against allowance of witness fees incurred by an expert in preparation outside the courtroom. In allowing the expert witness fees, this court relied on Rule 11's reference to Minn.Stat. § 357.25 and the discretion granted to the trial court to hold that:

Rule 11 may disallow fees for outside preparations which are merely convenient, but.it does not disallow those necessary for testimony.

*Id.* at 177.

In support of its decision to allow the full $8,546 in expert witness fees, the trial court stated:

[T]he costs charged by the expert are customary and reasonable and that the time spent in preparation for and the actual testimony of the expert at trial were reasonable and useful to the Court in understanding the issues presented.

Under *Mohwinkel*, these reasons justify an award of the expert witness' total costs.

## DECISION

The evidence supported the trial court's finding that appellant committed fraud by concealing the existence and effect of the amendment to the trust making it irrevocable. The trial court had jurisdiction to declare void the amendment making the trust irrevocable, and to validate the revocation of the trust. The trial court's admission into evidence of a prior disciplinary action against appellant was not an abuse of discretion. The trial court did not abuse its discretion in finding that fees appellant charged to the trust were excessive and requiring appellant to reimburse $360,000. The trial court's decision refusing to allow appellant's attorney fees to be charged to the trust was proper. The trial court did not abuse its discretion in granting respondent's motion for $8,546 in expert witness fees.

Affirmed.