## RICHFIELD BANK AND TRUST COMPANY v. ROGER E. SJOGREN AND ANOTHER.

244 N. W. 2d 648.

July 16, 1976—No. 45966.

*Wurst, Bundlie, Carroll & Crouch* and *Donald R. Bundlie,* for appellant.

*Popham, Haik, Schnobrich, Kaufman & Doty* and *Bruce D. Willis,* for respondents.

Heard before Sheran, C. J., and Otis, Kelly, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

Appellant, Richfield Bank and Trust Company, commenced this action to recover on a promissory note executed by respondents, Roger E. Sjogren and Anna Mae Sjogren. The respondents admitted execution of the note but affirmatively alleged that the transaction was induced by appellant's fraudulent concealment of material information. A jury returned a special verdict in favor of respondents, and this appeal was taken from the denial of the bank's motion for judgment notwithstanding the verdict or a new trial. We affirm.

In April 1972 the respondents purchased a service route and 10 commercial air purification units from a corporation known as National Pollution Eliminators, Inc. Under the terms of the purchase contract, National Pollution would place the purification units in various business establishments and the respondents would collect rents and service the units. Respondents were satisfied with the results of the transaction and decided to expand the business by purchasing more units. David Morton, president of National Pollution, suggested to the respondents that they purchase 50 additional purification units and that the financing for such a purchase could be arranged through Richfield Bank. Respondents decided to make the purchase and on May 26, 1972, they signed a purchase contract. The contract was contingent upon respondents successfully securing a loan to finance the purchase. Immediately after the contract was signed,

the respondents met at Richfield Bank with Michael Thompson, a commercial loan officer of Richfield Bank. Respondents were not depositors of Richfield Bank and had had no prior dealings with the bank. Thompson approved a loan of $44,750 to respondents, knowing that the proceeds would go to National Pollution to be used to purchase the 50 air purification units. Respondents executed a 90-day promissory note and gave Richfield Bank a security interest in some real estate and in the 50 air purification units. The respondents did not inquire into the financial condition of National Pollution, nor did Michael Thompson voluntarily disclose information regarding National Pollution's financial condition.

Respondents subsequently discovered that National Pollution was financially insolvent and unable to deliver the 50 purification units.[1] Concerned about this development, respondent Roger Sjogren met with Thompson who informed him that the 50 units which respondents had purchased were not available and in fact had not been available at the time of the loan on May 26, 1972.

Taking the evidence most favorable to the respondents, the jury could reasonably have found that on May 26, 1972, the date of the loan, the officers of National Pollution knew that they could not fulfill the obligations in the contract with respondents. Supporting this jury finding was testimony (a) that prior to May 26, 1972, National Pollution was placed on a "cash only" basis by its supplier of component parts; (b) that, because of this fact, the company had virtually ceased production of the units; (c) that the production force had dwindled to 1 or 2 people; and (d) that there were no more than 10 units in inventory on April 1, 1972.

Equally significant for purposes of this appeal is evidence showing that Michael Thompson, the loan officer of Richfield Bank and the only employee of the bank with whom respondents dealt, (a) was the only bank officer who handled National Pollution's account at the Richfield Bank; (b) was listed by National

---

[1] National Pollution went out of business in August 1972.

Pollution as its credit reference to such customers as the respondents; (c) had personally loaned National Pollution $7,000 or $8,000 of his own money; (d) had received certain "fringe" benefits from National Pollution such as traveling at the company's expense and using a Cadillac automobile furnished by the company; and (e) was an active participant in the affairs and decisions of the company, and, indeed, was described by one of the employees of National Pollution as "calling all the shots" for National Pollution from February or March 1972 onward, and as being involved in "just about everything that happened on a day-to-day basis in that company." Based on this evidence the jury found that Michael Thompson knew of the pertinent financial condition of National Pollution at the time of the Sjogren loan and of the actions, concealment, and representations of the officers of National Pollution in the conduct of their business in relation to the Sjogrens.

■ Since the record discloses that respondents did not ask Thompson, the bank's officer, any questions concerning the financial condition of National Pollution, and since Thompson did not volunteer any information about it, the principal issue on this appeal is whether Thompson's failure to voluntarily disclose such information constituted fraud. It is well established that—

"* * * if a party conceals a fact material to the transaction, and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated." Thomas v. Murphy, 87 Minn. 358, 361, 91 N. W. 1097, 1098 (1902).

See, also, King v. International Lbr. Co. 156 Minn. 494, 195 N. W. 450 (1923).

Before nondisclosure may constitute fraud, however, there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him. See, generally, 37 Am. Jur. 2d, Fraud and Deceit, § 146. In Klein v. First

Edina Nat. Bank, 293 Minn. 418, 421, 196 N. W. 2d 619, 622 (1972), this court stated:

"As a general rule, one party to a transaction has no duty to disclose material facts to the other. However, *special circumstances* may dictate otherwise. For example:

"(a)  One who speaks must say enough to prevent his words from misleading the other party. Newell v. Randall, 32 Minn. 171, 19 N. W. 972 (1884).

"(b)  One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party. [Marsh] v. Webber, 13 Minn. 99 (109) (1868).

"(c)  One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts. See, e. g., Wells-Dickey Trust Co. v. Lien, 164 Minn. 307, 204 N. W. 950 (1925)." (Emphasis supplied.)

Appellant contends that none of the three "special circumstances" mentioned in Klein is present in the instant case. Indeed, respondents concede that Thompson made no statements which encouraged them at the time of the loan transaction and respondents do not assert that there was any fiduciary relationship between them and appellant. Respondents do argue, however, that the three "special circumstances" enumerated in the Klein case are merely illustrative of situations where there is a duty to disclose, and that there are other "special circumstances" which require disclosure.

The determination of whether the facts of this case fall within a category of "special circumstances" which would justify imposing on the bank the duty to disclose the financial condition of its depositor, National Pollution, is complicated by the principle that a bank is generally under a duty not to disclose the financial condition of its depositors. See, Peterson v. Idaho First Nat. Bank, 83 Idaho 578, 367 P. 2d 284, 92 A. L. R. 2d 891 (1961) ; Milohnich v. First Nat. Bank of Miami Springs, 224 So. 2d 759 (Fla. App. 1969) and Cunningham v. Merchants' Nat.

Bank, 4 F. 2d 25 (1 Cir.), certiorari denied, 268 U. S. 691, 45 S. Ct. 511, 69 L. ed. 1160 (1925).

In the Peterson, Milohnich, and Cunningham decisions, however, the banks did not have actual knowledge of any fraudulent activities. For example, the court in Cunningham stated (4 F. 2d 30):

"* * * Banks are not immune from human selfishness, and it is quite probable that this bank was anxious to get as large a deposit as possible. But we cannot find, from the record, that it used undue means to obtain a large deposit, or that its officers have been guilty of perjury when they say that they did not know of Ponzi's insolvency and did not believe him to be a bankrupt. It is easy to attack banks after a depositor has proved to be a swindler; but, as we have said, this bank must be judged from the evidence it had before it at the time of the transaction."

The clear implication is that if the bank actually knew that its depositor was insolvent and engaged in fraudulent activity at the time of the transaction, then it would have been under a duty to disclose this fact, since, as the court noted (4 F. 2d 29):

"* * * There is a moral duty of banks to the community in which they do business to use reasonable care in seeing that their depositors are not committing a fraud upon the public."

Thus, the instant case can be distinguished from those cases holding that a bank may not disclose the financial condition of its depositors if it can be shown that Richfield Bank had *actual knowledge* of the fraudulent activities of its depositor, National Pollution.

In determining whether Richfield Bank had actual knowledge of fraudulent activity, it should be noted that knowledge of insolvency is not necessarily equivalent to knowledge of fraud. It is well settled that an insolvent purchaser, buying on credit, is not bound to disclose his financial condition to the seller if he has a reasonable expectation of being able to pay for the goods. 37 Am. Jur. 2d, Fraud and Deceit, § 171. If, on the other hand,

a party is so insolvent that he has no reasonable expectation of fulfilling his contract obligations, then it is fraud for that party to fail to disclose his insolvency before entering the contract. We recognized this distinction in Forsythe v. First State Bank of Mentor, 185 Minn. 255, 258, 241 N. W. 66, 67 (1932), when we stated: "The cases make a distinction between known irretrievable insolvency and where there is insolvency accompanied by reasonable hopes that by continuing the business fortune may be retrieved."

Applying this principle to the instant case, the determinative question is whether Richfield Bank, through its loan officer, Michael Thompson, actually knew that National Pollution was so irretrievably insolvent that it had no reasonable expectation of fulfilling its obligations under the contract with respondents. If Richfield Bank knew only that National Pollution was insolvent, as opposed to irretrievably insolvent, it would not have actual knowledge of fraud and thus would not be under a duty to disclose the financial condition of its depositor to respondents.

The jury specifically found (1) that National Pollution's officers knew that they could not fulfill their contractual obligation to respondents; and (2) that Michael Thompson knew of the pertinent financial condition of National Pollution and of the actions, concealment, and representations of the officers of National Pollution in the conduct of their business in relation to the respondents.[1] These findings are adequately supported by the record, which included substantial evidence as set forth herein, clearly demonstrating Thompson's extensive personal participation in and intimate knowledge of the affairs of National Pollution. Based on this evidence, the conclusion that Thompson actually knew that National Pollution had no reasonable expectation of fulfilling its contractual obligations is compelling.

---

[1] Under the facts of this case Thompson's knowledge may clearly be imputed to the Richfield Bank. State Bank of Morton v. Adams, 142 Minn. 63, 170 N. W. 925 (1919).

Therefore, we hold that under the unique and narrow "special circumstances" of this case, in which the bank had *actual knowledge* of the fraudulent activities of one of its depositors, it had an affirmative duty to disclose those facts to the respondents before it engaged in making the loan to respondents which furthered the fraud.[2]

■ The trial court, in instructing the jury, informed it of the effect of its special verdict answers on the outcome of the case. Rules of Civil Procedure, Rule 49.01, as amended on January 5, 1973, and in effect at the time of the trial in this case, prohibits the trial court from instructing the jury as to the effect of its special verdict answers in a case of this type.[3] While counsel for both parties, and the court, were apparently unaware of the rule, counsel for Richfield Bank, without making reference to the rule itself, objected on the ground that instructions to the jury as to the effect of their answers was "not necessary and could be prejudicial."

Because the evidence overwhelmingly supports the jury's answers to the interrogatories submitted to it, we find that, while

---

[2] We recognize, as stated herein, that disclosing facts concerning a depositor may, under some circumstances, constitute a breach of the bank's duty to its depositors not to disclose confidential information. In circumstances in which that may be the case, the bank should simply refuse to make the loan. A bank should not undertake any duty to a new customer when to do so involves either furtherance of fraud or breach of its duty to an existing customer.

[3] Rules of Civil Procedure, Rule 49.01, reads, in pertinent part, as follows: "(1) * * * Except as provided in Rule 49.01(2), neither the court nor counsel shall inform the jury of the effect of its answers on the outcome of the case.

"(2) In actions involving Minn. St. 1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury."

it was clearly error to instruct as to the effect of the answers, it was not so prejudicial as to require a new trial. See, Rules of Civil Procedure, Rule 61.

Affirmed.