**STATE BANK OF HAMBURG, Appellant,**

v.

**Richard STOECKMANN, et al., Respondents.**

No. C8–87–898.

Court of Appeals of Minnesota.

Dec. 22, 1987.

Review Denied Feb. 17, 1988.

**114** 

Mac R. Willemssen, Melchert, Hubert, Sjodin & Willemssen, Chaska, for appellant.

William Haas, Hutchinson, for respondents.

Heard, considered and decided by WOZNIAK, NORTON and IVERSON,* JJ.

## OPINION

WOZNIAK, Chief Judge.

This is an appeal from a mortgage foreclosure action initiated by appellant State

Bank of Hamburg (the Bank) against respondents Richard and Margaret Stoeckmann (Stoeckmanns). The Bank appeals the jury verdict finding it did not possess a valid second mortgage. The Bank claims the trial court's instructions were erroneous, it erred in admitting hearsay testimony, and the evidence was insufficient to support the verdict. We affirm.

## FACTS

Respondent Richard Stoeckmann and his two sisters inherited from their father an 80–acre farm in Carver County, Minnesota. The property was subject to a life estate in favor of their mother, Evangeline Perbix.

On October 17, 1977, the Stoeckmanns purchased the property from the other heirs, and delivered a promissory note and first mortgage to Evangeline Perbix. The next day they met with the president of the Bank to close on an $18,250 loan. They signed a promissory note and security agreement relating to certain personal property and subsequently paid Richard Stoeckmann's two sisters for their share of the property. They testified that a few days after the loan closing, they were called back to sign an additional document which they were unable to identify.

The document which is the crux of this action is a second mortgage running in the Bank's favor, dated October 18, 1977. The Bank claims this document was signed by the Stoeckmanns after an appropriate explanation from the bank president. The Stoeckmanns deny having any discussion regarding the second mortgage. They remembered signing both the security agreement and promissory note, but denied signing the second mortgage. Although they denied signing the mortgage, they testified that the signatures on the mortgage appeared to be theirs.

The Stoeckmanns claim the mortgage was the document signed after the October 18, 1977 closing. The October 18 date was typed on the front of the mortgage, but only written on the document's other side

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

near the Stoeckmanns' signatures. While the Bank contends the date was handwritten for convenience, the Stoeckmanns assert that it demonstrates the document was signed at a later date without explanation. They additionally testified the document was drafted by the law firm of the same attorney who had represented their family over the years. They signed in reliance on the fact their family law firm drafted the statement, but were unaware the firm also represented the Bank.

While the financing statement was filed with the county recorder's office, the mortgage was not filed. In addition, the amount of consideration of the mortgage was left blank, a practice the Bank's president testified was rare. The Stoeckmanns thus claim their signatures were obtained without their knowledge or any disclosure by the Bank.

The deposition of the Stoeckmanns' attorney at the time of the original loan was read to the jury over the Bank's objection. The attorney testified that in 1985 the president of the Bank told him there was no mortgage on the property, but they maintained a security agreement over certain machinery and livestock. The attorney stated that the first knowledge he had of the existence of the second mortgage was not until July of 1985.

The president of the Bank testified that it is usual banking procedure to close a loan by going over all the loan documents prior to execution. However, he was uncertain whether he followed this exact procedure with the Stoeckmanns and whether he explained the reason the mortgage amount was left blank. Initially, he testified that he went over the mortgage with the Stoeckmanns, but could not recall what was discussed. He later testified that he "thought" the mortgage was "explained to a small degree," as well as the reason it had been left blank. Upon further cross-examination, he testified that he based his answer that the mortgage was explained to the Stoeckmanns on the fact that it was normal banking procedure, and he actually had no recollection whether he followed these procedures. He also denied telling

the Stoeckmanns' first attorney that they did not possess a mortgage. He was certain the mortgage was signed on October 18.

Both prior to and in the years following 1977, the Stoeckmanns dealt extensively with the Bank. Following financial difficulties in 1985, the parties agreed to liquidate the Stoeckmanns' collateral. The Stoeckmanns eventually petitioned for bankruptcy under Chapter 7 of the U.S. Bankruptcy Laws. After the sale and bankruptcy, $18,050 of the loan remained unpaid and unaffected by the sale or bankruptcy proceedings.

In 1985, when the Stoeckmanns' financial difficulties had become apparent, the Bank finally recorded the second mortgage and sent a copy to the Stoeckmanns' attorney. Both the Stoeckmanns and their attorney were surprised to find the second mortgage had ever existed, and denied its validity.

The Bank then proceeded to foreclose by action the second mortgage. The Stoeckmanns denied giving the Bank a second mortgage, claimed the document was fraudulently obtained, and claimed there was no meeting of the minds or consideration supporting the mortgage. The Bank asserted the document and its validity spoke for itself.

The jury found that the Bank did not possess a valid mortgage. The Bank appeals from the trial court's denial of its motion for a new trial.

## ISSUES

1. Were the trial court's jury instructions erroneous?

2. Was the evidence sufficient to support the jury verdict?

3. Did the trial court err in ruling the deposition testimony of respondents' former attorney was admissible hearsay?

## ANALYSIS

1. Upon review, the instructions of the trial court must be viewed in their entirety from a practical and common sense point of view. *Cameron v. Evans*, 241 Minn. 200, 208, 62 N.W.2d 793, 798 (1954).

The trial court is allowed considerable latitude in the language used in instructions, and a new trial will not be granted when they fairly and correctly state the applicable law. *Id.* Errors in jury instructions are fundamental if they destroy the substantial correctness of the charge as a whole, cause a miscarriage of justice, or result in substantial prejudice. *Lindstrom v. Yellow Taxi Company of Minneapolis,* 298 Minn. 224, 229, 214 N.W.2d 672, 676 (1974). The granting of a motion for a new trial on the ground of erroneous jury instructions largely rests in the sound discretion of the trial court and its decision will not be reversed on appeal unless there has been a clear abuse of that discretion. *Id.* at 230, 214 N.W.2d at 677.

The trial court instructed the jury on the Bank's duty to disclose in reliance upon case law and a portion of the definition of fraud listed in 4 Minnesota Practice, JIG 610 (3rd ed. 1986):

> As a general rule, one party to a transaction has no duty to disclose material facts to the other. However, special circumstances may dictate otherwise. One who speaks must say enough to prevent his words from misleading the other party, and one who stands in a confidential or fiduciary relationship to the other party to a transaction must disclose material facts.
>
> A fact is material if the fact, if known, would have influenced the other person's judgment or decision. A fiduciary relationship exists when one person places confidence in another person and as a result the other person assumes a position of superiority and influence over him or her. The relation and duties in it need not be legal, but may be moral, social, domestic, or merely personal.

The court next instructed the jury pursuant to *Klein v. First Edina National Bank,* 293 Minn. 418, 196 N.W.2d 619 (1972):

> When a bank transacts business with a depositor, or other customer, it has no special duty to counsel the customer and inform him or her of every material fact relating to the transaction, including the bank's motive, if material, for participating in the transaction, unless special circumstances exist, such as where the bank knows or has reason to know that the customer is placing his or her trust and confidence in the bank, and is relying on the bank so to counsel and inform them.

The Bank contends the court's instructions were erroneous because they neglected to include all the elements necessary to prove fraud and because no fiduciary relationship can exist between a lender and a borrower. JIG 610 lists five elements necessary to prove fraud. While the trial court's instructions related to the first element of representation of a material fact, it did not include in its instructions the specific elements listed in JIG 610. These elements include knowledge of a false representation, made with intent to induce reliance, reliance, and damages.

Although the instructions may have been minimal and of a more general nature, they were not a misstatement of the law. The instruction given by the trial court reiterated virtually verbatim the rule established by the Minnesota courts on a bank's duty to disclose certain information. *See Klein,* 293 Minn. at 421–22, 196 N.W.2d at 622–23; *Midland National Bank of Minneapolis v. Perranoski,* 299 N.W.2d 404, 413 (Minn.1980); *MacKenzie v. Summit National Bank of St. Paul,* 363 N.W.2d 116, 119 (Minn.Ct.App.1985).

■ While the additional elements of fraud listed in JIG 610 were not specifically reiterated, the instruction did include the rule previously laid out in *Klein* which covered the elements of the Bank's knowledge it was relied upon, and the Stoeckmanns' subsequent reliance on the Bank. A general instruction is better than a specific one since it avoids the risk of overemphasizing one side of the case and confusing the jury. *Cameron* 241 Minn. at 209, 62 N.W.2d at 799. Viewing the instructions as a whole and in light of prevailing Minnesota law, we find the instructions on the issue were not so fundamentally erroneous that they resulted in substantial prejudice and a miscarriage of justice.

■ The Bank also claims the instruction was erroneous because no fiduciary relationship could exist between the parties. However, a fiduciary relationship is not always essential for a defense of fraud in a case such as this. In *Klein,* the court held a party to a transaction has a duty to disclose when "special circumstances" exist and listed three examples of such circumstances, only one of which covered the fiduciary relationship of the parties. *Klein* 293 Minn. at 421, 196 N.W.2d at 622.

In *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 244 N.W.2d 648 (1976), for example, the court found that a bank employee fraudulently failed to disclose a depositor's financial condition to a party obtaining a loan from the bank to purchase goods from the financially-troubled depositor. The court did not rely upon the fiduciary relationship between the parties, but based the bank's affirmative duty to disclose upon the "special circumstances" of the case where the bank had actual knowledge of the fraud. *Id.* at 369, 244 N.W.2d at 652. As a result, contrary to the Bank's claim, a fiduciary relationship is not essential to the defense of fraudulent nondisclosure and the trial court's instructions were not erroneous.

■ 2. The Bank next contends the evidence was insufficient to support the jury verdict. The focus of this claim again is upon the alleged failure to disclose the existence and signing of the second mortgage. A verdict will not be disturbed unless it is manifestly and palpably contrary to the evidence. *Donovan v. Dixon,* 261 Minn. 455, 460, 113 N.W.2d 432, 436 (1962). Upon review, the evidence must be viewed in the light most favorable to the prevailing party and the verdict will not be disturbed if it is reasonably supported by the evidence. *Waite v. American Creosote Works, Inc.,* 295 Minn. 288, 291, 204 N.W. 2d 410, 412 (1973).

As the trial court instructed, *Klein* holds that a party to a transaction generally has no duty to disclose material facts unless special circumstances exist. Examples of situations which give rise to a duty to disclose include: one who speaks must say enough to prevent misleading the other party, one with special knowledge of material facts which the other has no access, and one who stands in a fiduciary or confidential relation with another. *Klein* 293 Minn. at 421, 196 N.W.2d at 622. The rule enunciated in *Klein,* as the trial court instructed, is that the bank has no disclosure duty unless it "knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Id.* at 422, 196 N.W.2d at 623. The evidence must be sufficient enough to demonstrate special circumstances requiring disclosure as exemplified by the list in *Klein.*

Normally we would adhere to the general rule established in *Klein* that a bank has no duty to disclose material facts. However, we find the evidence reasonably supports the jury verdict under the narrow facts of this case.

The Stoeckmanns testified that the signatures on the mortgage appeared to be theirs; however, they only recall signing the note and security agreement, and deny any recollection of signing the mortgage. They recall signing a document because it was drafted by their family attorney's law firm, in whom they had placed their trust. They were unaware their attorney's firm also represented the Bank. Further, they testified there was never any explanation or discussion regarding the mortgage.

The Stoeckmanns also stated that they did not intend to execute a mortgage, and that they relied upon the Bank's president. The president, in turn, testified he was aware of his superior position and knowledge as well as the trust placed in him by the Stoeckmanns. His testimony regarding the mortgage and any explanations given were subject to considerable variation. Despite initial testimony that he recalled explaining the mortgage, he later equivocated, stating he "thought" he provided a "small amount" of explanation. Eventually he testified that he had no recollection if standard procedures were followed, and could not recall any discussion of the mortgage.

The mortgage was signed, but not recorded until eight years after the closing, despite extensive dealings between the parties following the 1977 closing. Moreover, the amount of consideration was left blank on the mortgage, a practice the Bank's president testified was rare. The Stoeckmanns' original attorney even testified that the president initially told him that the Bank held no mortgage, but maintained only a security interest in certain personal property.

Although a bank generally has no duty to disclose material facts such as the financial condition of third parties, here there was an alleged failure to discuss and explain the very documents which determined the rights and liabilities between the parties in their direct dealings. Under the first example listed in *Klein*, the evidence thus was sufficient to show the Bank breached its duty to disclose by failing to say enough during the loan transaction to prevent the Stoeckmanns from being misled. Even if the parties could not recall their precise conversation, the Bank nonetheless had the responsibility of preventing its acts, which are often equated with words, from misleading the Stoeckmanns.

In addition, we find under *Klein* that the facts as a whole and the "special circumstances" of this case dictate that the Bank fraudulently failed to disclose or explain the existence of the mortgage. As in similar cases ruling on "special circumstances," we limit our holding to the narrow facts of this case. *See Richfield Bank & Trust Co.* 309 Minn. at 369, 244 N.W.2d at 652. Given the significance of the mortgage document to the dealings between the parties, the failure to record, the discrepancies in listing the date of the mortgage, the amount of consideration left blank, and the testimony of the parties, the jury reasonably could have determined the Bank fraudulently failed to disclose the existence of the mortgage. The jury is in the best position to rule upon the facts presented before it and weigh witness credibility.

Even if we were to find there was no fraudulent failure to disclose, the jury reasonably could have found there was no

assent to the mortgage contract and no meeting of the minds. A contract requires a meeting of the minds concerning its essential elements. *Minneapolis Cablesystems v. City of Minneapolis*, 299 N.W.2d 121, 122 (Minn.1980). The Bank asserts the defense of no meeting of the minds is inapplicable because the Stoeckmanns both signed the mortgage and had the opportunity to read and understand the document. Although there is no meeting of the minds when a contract signed by the parties is not read or understood, that party nonetheless *"is bound in case the other party had no reason to know that he did not read or understand"* the contract (emphasis added). 1 Corbin on Contracts § 107 p. 479 (1963). While the Stoeckmanns apparently signed the mortgage without ascertaining its contents, the jury reasonably may have concluded the evidence was sufficient to show that the president had reason to believe the Stoeckmanns did not read or understand the mortgage, given their trust and reliance on him and his superior knowledge. As a result, there still may not have been a meeting of the minds or assent to the mortgage contract.

3. The Bank finally contends the court erred in allowing hearsay testimony from the Stoeckmanns' former attorney. The Bank objected when the testimony covered the Stoeckmanns' statements to their attorney after notification of the existence of the second mortgage.

Minnesota Rules of Evidence 801(d)(1) provides that a statement is not hearsay if:

The declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is * * * (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or * * * (D) a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

The disputed testimony related to the reactions the Stoeckmanns had in front of their attorney when they were notified of

the mortgage document's existence. His testimony also reiterated the Stoeckmanns' version of the events the day they were called back to sign the additional document. On cross examination, the Bank disputed the Stoeckmanns' claim that they signed a document at a later date by questioning them regarding their delay in divulging this information, and also by bringing out on direct examination of the bank president that the mortgage was in fact signed on October 18 and not a later date. The record indicates that the Bank on cross-examination impliedly charged the Stoeckmanns fabricated the story of the late document signing, and their attorney's testimony was an attempt to rebut this implication. Further, the testimony related and described the events and conditions surrounding the Stoeckmanns' notification of the existence of the second mortgage within Rule 801(d)(1)(D). We find the testimony was admissible hearsay.

### DECISION

The trial court's jury instructions, viewed in their entirety, were not erroneous. The jury verdict was not manifestly and palpably contrary to the evidence. Finally, the trial court did not err in ruling the deposition testimony of the Stoeckmanns' former attorney was admissible hearsay.

Affirmed.