Nancy DRISCOLL as Trustee for the Next–of–Kin of Deane Driscoll, Deceased, Plaintiff,

v.

STANDARD HARDWARE, INC., Defendant,

and

Atlas Copco Drilling Solutions, LLC, (incorrectly denominated as USA Holdings, Inc. d/b/a Atlas Copco), defendant and third party plaintiff, Respondent,

v.

United Taconite, LLC, third party defendant, Appellant,

Intone Industrial Co., Ltd., et al., Third Party Defendants,

and

United Taconite, LLC, fourth party plaintiff, Appellant,

v.

Atlas Copco Construction Mining Technique, LLC, et al., fourth party defendants, Respondents.

No. A09–2171.

Court of Appeals of Minnesota.

July 20, 2010.

Edward F. Fox, Mark R. Bradford, Bassford Remele, Minneapolis, MN; and Richard J. Bedell, Jr. (pro hac vice), Jones Day, Cleveland, OH, for appellant.

Daniel Q. Poretti, Cynthia P. Arends, Peter Gray, Andrew J. Sveen, Nilan Johnson Lewis, Minneapolis, MN, for respondents.

Considered and decided by TOUSSAINT, Presiding Judge; HUDSON, Judge; and WILLIS, Judge.*

## OPINION

HUDSON, Judge.

Appellant mining company challenges the district court's dismissal on summary judgment of its claims for fraud, fraudulent misrepresentation by omission, breach of warranty, and rescission, which relate to an industrial drill manufactured, leased, and sold by respondents. Appellant also challenges the district court's denial of leave to amend its complaint to allege punitive damages. By notice of related appeal, respondents challenge the district court's determination that respondents waived attorney-client privilege as to a document inadvertently produced during discovery.

Because the district court did not err by dismissing appellant's claims for fraud, fraudulent misrepresentation by omission, and rescission, or by denying appellant's motion to allege punitive damages, we affirm on those issues. But we conclude that the district court erred by applying the concept of merger to bar appellant's claims for breach of warranty under the economic-loss doctrine, Minn.Stat. § 604.101, and, accordingly, we reverse the district court's judgment barring appellant's claim for breach of the implied warranty of merchantability and remand this claim to the district court. Appellant, however, has not shown that a genuine issue of material fact exists as to appellant's reasonable reliance on representations of fitness for a particular purpose; accordingly, we affirm summary judgment on that claim. Finally, we affirm the district court's decision that respondents waived attorney-client privilege as to a disputed discovery document.

## FACTS

Appellant United Taconite, LLC operates the Thunderbird Mine, a taconite mine in Eveleth. The mine consists of a series of "benches" that correspond to elevations within the mine. A series of planned drill holes on a bench is referred to as a "pattern." These benches and

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

patterns have slopes that vary from near level to ten degrees or more.

Historically, appellant used electric drills to drill blastholes into the ore body of the mine. In late 2005, appellant planned to drill in an area of the mine that did not have the electrical infrastructure necessary to power its electric drills. Rather than extend the electrical infrastructure, appellant decided to look for a drill that was capable of operating throughout the mine without a supporting electrical grid. Appellant's search was successful, and, in March 2006, appellant leased a diesel-powered drill called the Pit Viper or PV–351 (drill) manufactured by respondent Atlas Copco Drilling Solutions LLC (ACDS or Atlas Copco). The drill is a blasthole-production drill, weighing approximately 380,000 pounds. After two six-month lease periods, appellant exercised its option to purchase the drill.

In April 2007, Deane Driscoll, a United Taconite employee, was operating the drill on a steep slope at the mine when one of the drill's leveling jacks failed, and the drill tipped over. Driscoll was thrown from the cab of the drill and killed.

Plaintiff Nancy Driscoll, Deane Driscoll's wife, filed a wrongful-death action against Atlas Copco and defendant Standard Hardware, the company that supplied the bolts for the leveling jacks. Atlas Copco brought third-party claims for indemnity and contribution against United Taconite, which asserted counterclaims against Atlas Copco for fraud, fraudulent misrepresentation by omission, negligence, strict liability, breach of warranty, and rescission, arising from the lease and sale of the drill.[1] United Taconite also asserted fourth-party claims against two other Atlas Copco entities—respondent Atlas Copco Construction Mining Technique LLC (ACCMT), a marketing and sales entity, and respondent Atlas Copco Customer Finance, LLC (ACCF), which financed the lease and from which appellant purchased the drill.[2]

Respondents moved for partial summary judgment on appellant's fraud, misrepresentation, negligence, strict liability, breach of warranty, and rescission claims. The plaintiff and appellant separately sought leave to amend the complaint to assert punitive-damages claims relating to the fraud and misrepresentation claims. After a hearing, the district court granted plaintiff's motion to amend, but denied appellant's motion. The district court granted respondents' motion for partial summary judgment, concluding, inter alia, that the economic-loss doctrine precluded appellant's claims for breach of implied warranties of merchantability and fitness for intended use.

Plaintiff settled her claims against respondents on a *Pierringer/Naig* basis. The district court heard respondents' motion asserting attorney-client privilege as to a document obtained during discovery; the court determined that the privilege applied, but that respondents had waived the privilege. The parties stipulated to the entry of final partial judgment under Minn. R. Civ. P. 54.02, and this appeal follows.

1.  Appellant also sought indemnification of the workers' compensation benefits it paid as a result of the accident; Atlas Copco did not seek indemnification on this claim, and it is still pending before the district court.

2.  Appellant's fraud and misrepresentation claims relate to ACDS and ACCMT; the breach of warranty claims relate to ACDS and ACCF; and the rescission claims relate to ACDS, ACCF, and ACCMT.

## ISSUES

I.  Did the district court err by dismissing appellant's claims for fraud, fraudulent misrepresentation by omission, and rescission, and by denying leave to amend the complaint to allege punitive damages?

II. Did the district court err by concluding that appellant's breach-of-warranty claims were barred by the economic-loss doctrine, and that even if not barred, its claim for breach of implied warranty of fitness for intended use failed as a matter of law because of lack of reliance?

III. Did the district court err by concluding that respondents waived attorney-client privilege with respect to a document inadvertently produced during discovery?

## ANALYSIS

Summary judgment allows a court to dispose of a claim on the merits if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997); Minn. R. Civ. P. 56. On appeal, this court examines whether any genuine issues of material facts exist and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). This court views the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). But "there is no genuine issue of material fact ... when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of [that] party's case to permit reasonable persons to draw dif-

ferent conclusions." *DLH, Inc.*, 566 N.W.2d at 71. This court "review[s] de novo whether a genuine issue of material fact exists" and "whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002).

Minnesota's economic-loss doctrine, codified at Minn.Stat. § 604.101, places limits on both product-defect tort claims and common-law misrepresentation claims arising from the sale or lease of goods. *See also id.*, subd. 1(e) (defining a product-defect tort claim as "a common law tort claim for damages caused by a defect in the goods"). Under the economic-loss doctrine, "[a] buyer may not bring a product defect tort claim against a seller for compensatory damages unless a defect in the goods sold or leased caused harm to the buyer's tangible personal property other than the goods or to the buyer's real property." *Id.*, subd. 3. And "[a] buyer may not bring a common law misrepresentation claim against a seller relating to the goods sold or leased unless the misrepresentation was made intentionally or recklessly." *Id.*, subd. 4.

Appellant argues that the district court erred by granting summary judgment on its claims relating exclusively to property damage, arguing that they fall within statutory exceptions to the economic-loss doctrine. Appellant asserts that it presented genuine issues of material fact for trial on its claims for fraud and intentional misrepresentation, which fall within the statutory exception for intentional or reckless misrepresentation. Appellant also argues that, because appellant's claims for breach of implied warranties of merchantability and fitness for intended use relate only to property damage, those claims are still available to appellant despite the statutory

limitations relating to product-defect tort claims. The district court granted summary judgment in favor of respondents on each of these claims, and we consider them in turn.

I

### Fraud

Appellant asserted a claim for fraud against respondents ACDS and ACCMT, alleging that these Atlas–Copco entities intentionally misled appellant as to the slope capabilities of the drill, in order to induce appellant to lease or purchase the drill. Appellant claims that respondents knew that appellant wanted to replace an aging electric drill with a diesel drill that would perform on steep slopes that did not have an electrical grid. Appellant asserts that respondents' salesperson affirmatively represented that the drill could perform on 20% slopes and that appellant relied on those representations in deciding to lease the drill.

■ To prevail on a fraud claim, a party must prove:

(1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.,* 736 N.W.2d 313, 318 (Minn.2007) (citation omitted).

The district court determined that the record was sufficient to create genuine issues of material fact as to the first three elements of appellant's fraud claim: a false representation of a material fact, knowledge of its falsity or reckless disregard as to its truthfulness, and intent to induce appellant to rely on the statement by leasing or purchasing the drill. But the district court concluded that no material factual issue existed on the element of reliance relating to the sale of the drill because appellant used the drill during a one-year lease period and conducted its own factual investigation as to the drill's capabilities during that period. *See Valspar Refinish, Inc. v. Gaylord's, Inc.,* 764 N.W.2d 359, 369 (Minn.2009) (stating that "[w]hen a party conducts an independent factual investigation before it enters into a commercial transaction, that party cannot later claim that it reasonably relied on the alleged misrepresentation"). The district court further determined that, even if reliance could be shown relating to inducement to enter the lease, appellant could not claim to have incurred damages during the lease period.

■ A party alleging misrepresentation has the burden to prove damages, including causation between the representation and the damages sought. *Marion v. Miller,* 237 Minn. 306, 309, 55 N.W.2d 52, 55 (1952); *Bryan v. Kissoon,* 767 N.W.2d 491, 496 (Minn.App.2009). Minnesota follows the "out-of-pocket" rule relating to damages in a misrepresentation action. *Raach v. Haverly,* 269 N.W.2d 877, 881 (Minn.1978). This rule provides that the measure of damages is generally the difference in value between the amount the plaintiff paid and the value of what the plaintiff actually received. *Id.*

Appellant argues that the district court improperly focused only on appellant's

nonreliance during the lease period, instead of, or in addition to, misrepresentations made to induce appellant to enter the lease. But the district court also grounded its analysis on appellant's lack of damages during the lease period caused by any pre-lease misrepresentations.

■ Appellant maintains that, contrary to the district court's conclusion, it sustained damages during the lease period in the form of lease payments made and the expense of hiring an outside contractor to terrace a mine surface to a level at which the drill could safely operate. But these expenses are akin to repair costs, which are not a proper measure of damages in a misrepresentation action. *See Lobe Enters. v. Dotsen,* 360 N.W.2d 371, 373 (Minn. App.1985) (rejecting damage calculation, in misrepresentation action, of out-of-pocket loss by subtracting repair costs from purchase price of real estate). And appellant has presented no evidence to show that the value of the drill during the lease period was less than represented by respondents. In fact, one of appellant's engineers testified that, during this period, the drill was one of appellant's more productive drills. We agree with the district court that the record presents no material fact issue as to damages incurred during the lease period resulting from respondents' alleged misrepresentations. Thus, the district court did not err by granting summary judgment on appellant's fraud claim.

### Fraudulent misrepresentation by omission

Appellant asserts that during the lease period, respondents ACDS and ACCMT breached a duty to disclose material information relating to the drill, including its slope limitations and side-to-side leveling capabilities, as well as the propensity of the jack bolts and welds to crack.

Specifically, appellant argues that the following material information known to respondents created a duty to disclose: (1) the 2005 report of Steven Ma, respondents' engineer, which indicated that the new grade of steel used in the jacks would yield when maximum pressure was applied; (2) the decision of Arnold Law, Atlas–Copco's vice president of engineering, to order appellant's drill constructed with a lower grade of steel; and (3) respondents' knowledge that the jacks on other drills of the same model had broken in the cutout area mentioned in the Ma report.

Appellant claims that because respondent's failure to disclose this information was intentional or reckless, appellant is not precluded by the economic-loss doctrine from seeking damages in tort for its losses. *See* Minn.Stat. § 604.101, subd. 4 (allowing common-law misrepresentation claims based on misrepresentation made "intentionally or recklessly").

■ Absent certain special circumstances, one party to a business transaction has no duty to disclose material facts to the other party. *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 366, 244 N.W.2d 648, 650 (1976). But a duty to disclose may arise if the parties stand in a fiduciary relationship or if one party "has special knowledge of material facts to which the other party does not have access." *Id.* If a party conceals these facts, "knowing that the other party acts on the presumption that no such fact[s] exist," nondisclosure may constitute fraud. *Id.* at 365, 244 N.W.2d at 650 (citation omitted).

The Minnesota Supreme Court "ha[s] rarely addressed that particular theory of fraud." *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn.1989). The supreme court has held, under

"unique and narrow special circumstances," that a bank had a duty to disclose a depositor's fraudulent activities to a borrower before making a loan that would further the fraud. *Richfield Bank & Trust Co.*, 309 Minn. at 369, 244 N.W.2d at 652 (quotation marks omitted); *see also Peterson v. Arellono*, 289 Minn. 541, 542, 185 N.W.2d 282, 284 (1971) (sustaining finding that plaintiff was induced to purchase food-processing business by concealment of material fact that business was subject to health-department warning that food license could not be renewed); *cf. Klein v. First Edina Bank*, 293 Minn. 418, 422, 196 N.W.2d 619, 623 (1972) (concluding that absent information that bank customer was imposing trust and confidence in bank, customer failed to make prima facie showing that banking relationship would impose duty to inform her that loan proceeds would satisfy third party's obligation). Courts applying Minnesota law have been reluctant to impose a duty to disclose material facts in arm's-length business transactions between commercial entities. *See, e.g., Taylor Inv. Corp. v. Weil*, 169 F.Supp.2d 1046, 1065 (D.Minn. 2001) (upholding summary judgment as to fraud claims by business computer system buyer against system provider, concluding that when parties were engaged in arm's-length bargaining transaction, no duty existed to supply omitted information).

■ The district court determined that respondents' alleged failure to disclose material information relating to the drill's slope and leveling capabilities related to appellant's fraud claim, not to its claim for fraudulent misrepresentation by omission. By contrast, the district court concluded that, to the extent respondents had information during the lease period relating to the jack's tendencies to crack or break, that information involved a safety concern, which was more appropriately addressed in appellant's misrepresentation-by-omission claim. But the district court stated that the only evidence relating to the existence of a safety hazard before the sale was the Ma report, which analyzed a possible change in the grade of steel used to construct the jacks. The district court determined that the Ma report, in and of itself, did not put respondents sufficiently on notice of a safety hazard to create a duty to disclose.

We agree with the district court that no duty to disclose existed. Although the Ma report stated that, with a proposed change in steel, the jack's yield strength would be reduced, Law questioned Ma's modeling and indicated his belief that if the jack bolts were preloaded, the stress distribution would be modified and the stress in the jack cylinder reduced. Law had not yet seen evidence of cracks at the cutout areas, and he decided to investigate whether that problem was occurring in the field. He stated that he allowed the deviation for a different grade of steel because the previous grade was no longer available, and he believed the new grade was equal to or better than the original grade. Therefore, although the record indicates that an internal discussion occurred relating to the jack's construction, this discussion by itself does not demonstrate that respondents had special knowledge of material facts that would have created a duty to disclose this information.

A similar analysis applies to respondents' notice of cracks occurring in the jacks in the field. Shortly before appellant purchased the drill in March 2007, Jeff Hamner, Atlas Copco's principal engineer, received an internal e-mail requesting repairs for a jack leg on a drill in Indonesia

that had cracked around the top plate, "a common area on ... drills to crack." But it was not until mid-April 2007 that Hamner received word that respondents' drills in Chile were experiencing problems with jack bolts and flanges bending and breaking. At that point, Atlas Copco engineers considered various designs to reinforce the jacks. The day before Driscoll's accident, an Atlas Copco factory-service specialist e-mailed Hamner relating to an additional cracked crosshead on a drill, stating that "[i]t appears the subject issue may be bigger than we anticipated." On the morning of the accident, Atlas Copco received word that a jack in Canada experienced cracking. Law then authorized an immediate communication to customers, through customer-service representatives, but because appellant's representative was out of town, appellant was not notified.

These unfolding events show that respondents had an escalating level of concern with the safety of the drills as they received successive reports that the drills' jack bolts and flanges were cracking. But at the time appellant's drill was sold, in March 2007, respondents had received only a single report from Indonesia of cracking in the top plate of one jack leg, which they believed occurred in a "common area" for cracking and could be repaired in the field. Based on this record, we conclude that the district court did not err by granting summary judgment on appellant's misrepresentation-by-omission claim. Respondents had no duty as a matter of law to inform appellant of facts allegedly material to the sale.

### Rescission

■ Appellant argued at summary judgment that, because all material information was not provided before the lease and purchase of the drill, it was entitled to rescind the purchase agreement. The district court determined that, because it had granted summary judgment on the fraud and misrepresentation claims, it would dismiss the claim for rescission. "A contract is voidable if a party's assent is induced by either a fraudulent or a material misrepresentation by the other party, and [it] is an assertion on which the recipient is justified in relying." *Carpenter v. Vreeman*, 409 N.W.2d 258, 260–61 (Minn.App.1987). Because we conclude that the district court properly dismissed appellant's fraud and misrepresentation claims, we affirm the grant of summary judgment on its rescission claim.

### Punitive damages

■ Punitive damages are not available for breach-of-contract claims or breach-of-warranty claims absent an independent tort, even if the breach is malicious. *Minn.-Iowa Television Co. v. Watonwan T.V. Improvement Assoc.*, 294 N.W.2d 297, 311 (Minn.1980); *In re Silicone Implant Ins. Coverage Litig.*, 652 N.W.2d 46, 74–75 (Minn.App.2002), *aff'd in part, rev'd in part*, 667 N.W.2d 405 (Minn.2003). Because the district court properly granted summary judgment on appellant's fraud and misrepresentation claims, appellant has no independent tort claims remaining for trial. Therefore, we deny as moot appellant's challenge to the district court's denial of its motion to amend the complaint to allege punitive damages.

### II

### Economic-loss doctrine

Appellant challenges the district court's ruling that its claims for breach of implied warranties of merchantability and fitness for intended use were precluded by the

economic-loss doctrine. The economic-loss doctrine precludes "product defect tort claim[s]" alleging damage to a defective product unless the product caused harm to the buyer's additional personal property or real property. Minn.Stat. § 604.101; *see id.*, subd. 1(e) (stating that a " '[p]roduct defect tort claim' means a common law tort claim for damages caused by a defect in the goods but does not include statutory claims"). This limitation applies "regardless of whether article 2 or article 2A of the Uniform Commercial Code under chapter 336 govern[s] the sale or lease that caused the seller to be a seller and buyer to be a buyer." *Id.*, subd. 2(2).

■ The district court concluded that the economic-loss doctrine barred appellant's claims for breach of an implied warranty of merchantability. We disagree. The district court, citing *Bilotta v. Kelley Co.*, 346 N.W.2d 616, 623 (Minn.1984), stated that "Minnesota courts have generally adopted the position that where there is a strict liability claim that the product has been designed in an inherently dangerous condition, the relationship to a warranty of merchantability is so close that the claims merge." In *Bilotta*, the supreme court reversed a verdict in a strict-liability case, concluding that the jury's design-defect instructions were deficient because they did not address the manufacturer's duty to produce a safe product. *Id.* at 622. The supreme court also noted that the jury instructions on breach of warranty were inappropriate, stating that "[i]t has been suggested by commentators that ... strict liability and negligence ... actually merge into one theory for consideration of design-defect cases." *Id.*

But *Bilotta* addressed this issue only in the context of jury instructions in a strict-liability case, which contained viable tort, as well as warranty, claims. Here, because appellant's tort claims have been dismissed at summary judgment, appellant has no remaining tort claims into which its warranty claims may merge. Appellant's only viable claims assert breach of warranties, based on economic losses sustained as a result of the failure of the drill. Therefore, because appellant may not assert "product defect tort claims," the economic-loss doctrine does not preclude appellant from seeking damages under the Uniform Commercial Code (UCC) for breach of implied warranties. *See* Minn.Stat. § 604.101, subd. 1(e). This is consistent with the established rule that the UCC provides the exclusive remedy for economic losses arising from breach of warranty. *See Lloyd F. Smith Co. v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11, 15 (Minn.1992) (stating that "[w]hen there is a claim by a buyer for damage to the defective product itself, (and this includes consequential damages) the [UCC] remedy is exclusive and tort will not lie"); *see also* J. David Prince, *Defective Products and Product Warranty Claims in Minnesota*, 31 Wm. Mitchell L.Rev. 1677, 1705–06 (2005) (stating that if "the buyer [has] suffered only economic harm as a consequence of the product being unmerchantable ... the claimant cannot, under the economic loss statute, bring a tort claim and must resort to a warranty claim"); 4A *Minnesota Practice*, CIVJIG 75 introductory note (2006) (stating that if a plaintiff suffers economic loss unaccompanied by physical injury, jury instructions on warranty may be appropriate, and instructions on product liability may be inappropriate). Because appellant may assert only claims relating to property damage resulting from the failure of the drill, the district court erred by determining that appellant's warranty claims "merged" with a

strict-liability cause of action and dismissing them on that basis.

Respondent also argues, for the first time on appeal, that appellant is bound by a disclaimer of warranties contained in the lease agreement for the drill. But the district court did not rule on this theory, and appellant did not brief it before this court. Therefore, we decline to consider it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (stating that issues not presented to and considered by the district court are waived); *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1982) (stating that issues not briefed on appeal are waived).

### *Implied warranty of merchantability*

■ Appellant argues that the drill was improperly designed and constructed, which breached an implied warranty of merchantability. An implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." Minn.Stat. § 336.2–314(2)(c) (2008). It is breached on a showing that a "product is defective to a normal buyer making ordinary use of the product." *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 53 (Minn.1982). A buyer seeking to recover for breach of warranty must establish: (1) the existence of a warranty, (2) breach of that warranty; and (3) that the breach caused the alleged harm. *Id.* at 52–53.

■ Respondents argue that no breach of an implied warranty of merchantability occurred because the drill was fit for its ordinary use, which was drilling on prepared surfaces. Respondents also maintain that, because appellant had an ample opportunity to inspect the drill during its year-long lease, any implied warranties were disclaimed. If a buyer has had the opportunity to fully examine goods before their purchase, no implied warranty exists with regard to defects that the examination ought to have revealed to the buyer. *See* Minn.Stat. § 336.2–316(3)(b) (2008) (stating that "when the buyer before entering into the contract has examined the goods ... as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed"). But warranties are not disclaimed if a product contains latent defects that cannot be ascertained by a professional buyer examining the product. Minn.Stat. Ann. § 336.2–316, cmt.; *see also H Window Co. v. Cascade Wood Prods., Inc.*, 596 N.W.2d 271, 277 (Minn.App.1999) (concluding that latent defect in window sash parts was not excluded from warranty coverage when defect did not become apparent until after windows were installed), *review denied* (Minn. Aug. 17, 1999). Here, appellant presented evidence that the drill jacks contained latent defects in the form of a tendency to crack at the bolt and flange level that could not have been discovered by routine examination. Therefore, respondents failed to show that, as a matter of law, appellant's use and inspection of the drill before the sale effectively disclaimed an implied warranty of merchantability.

Respondents also maintain that appellant failed to present evidence to support the element of causation, arguing that any damages were attributable to appellant's misuse of the drill by operating it on steep slopes. In asserting breach of an implied warranty of merchantability, "the plaintiff must show not only the breach but also a causal relationship between the breach and the loss sustained." *Int'l Fin. Servs., Inc. v. Franz*, 534 N.W.2d 261, 266 (Minn.1995). But causation in a breach-of-warranty case presents a factual issue. *See D.L. Heil v.*

*Standard Chem. Mfg. Co.,* 301 Minn. 315, 324, 223 N.W.2d 37, 42 (1974). Thus, it is not generally appropriate for resolution at summary judgment. Because we conclude that appellant has raised genuine issues of material fact relating to its claim of breach of implied warranty of merchantability, we reverse and remand that issue for trial.

### Implied warranty of fitness for intended use

■■■ Appellant also challenges the district court's summary judgment on its claim of breach of implied warranty of fitness for intended use. An implied warranty of fitness for intended use arises if a seller, at the time of a contract, has reason to know that the buyer has a particular purpose for the goods purchased, and the buyer relies on the seller's judgment or skill to select those goods. Minn.Stat. § 336.2–315 (2008). Breach of an implied warranty of fitness for intended use requires proof that: (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer's actual reliance. *See id.; Willmar Cookie Co. v. Pippin Pecan Co.,* 357 N.W.2d 111, 115 (Minn.App.1984).

Appellant argues that, during the lease period, appellant relied on respondents' representations that the drill was fit for the particular purpose of operating on slopes that exceeded 20 degrees. But the district court concluded that even if this cause of action were not precluded under the economic-loss doctrine, it would fail because, based on appellant's knowledge of the drill's slope limitations, appellant did not rely on any representations that the drill was fit for the particular purpose of drilling on steep slopes.[3]

■■■ Although this issue is close, we agree with the district court's determination. The record does show that, before the lease was executed, respondents' salesman told appellant's representative that he did "not see a problem with using the angle drilling feature to drill on your 20% slope."[4] But unlike the alleged latent defects in jack design and construction, the drill's slope capabilities were ascertainable and capable of examination during the lease period. *See* Minn.Stat. § 336.2–316(3). It is undisputed that during the year-long lease period, appellant tested the drill on varying terrain and worked closely with respondents' engineers to examine the drill's capabilities. For instance, in July 2006, appellant unsuccessfully attempted to use the drill on a steep, unprepared surface, known as "Dairy Queen Hill." That attempt was aborted after the drill operator expressed serious safety concerns. While the record shows that after that incident appellant continued to request information from respondents on the drill's side-to-side leveling capabilities, by that time, appellant unquestionably had notice that the drill had limitations with respect to its slope capabilities. *See Sobiech v. Int'l Staple & Mach. Co.,* 867 F.2d 778, 783 (2d Cir.1989) (concluding that plaintiffs' "extensive use and actual knowl-

---

3. The economic-loss doctrine does not preclude a cause of action for an implied warranty of fitness for intended use based on respondents' representations of particular characteristics of the drill. *See Piotrowski v. Southworth Prods. Corp.,* 15 F.3d 748, 751–52 (8th Cir.1994) (applying Minnesota law).

4. According to respondents, "angle drilling" refers to the capability of the drill, when located on level terrain, to drill angled blastholes.

edge" of problems with machine during several-month trial period precluded implied warranties as to machine's performance or design). Under these circumstances, no material factual issue exists as to appellant's actual reliance on any representation of the drill's slope capabilities, and the district court did not err by granting summary judgment on appellant's claim of breach of implied warranty of fitness for intended use.

## III

■ Respondents argue, by notice of related appeal, that the district court abused its discretion by determining that respondents waived attorney-client privilege with respect to a certain document produced inadvertently by respondents during discovery. The availability of privilege is an evidentiary decision, which this court reviews for abuse of discretion. *State v. Gianakos,* 644 N.W.2d 409, 415 (Minn.2002).

■ Under Minnesota law, "communications that seek to elicit legal advice from an attorney acting in that capacity, that relate to that purpose, and that are made in confidence by the client are protected from disclosure, unless the privilege is waived." *Nat'l Texture Corp. v. Hymes,* 282 N.W.2d 890, 895 (Minn.1979) (quotation omitted). During discovery, respondents produced a document, marked "confidential" and stamped "ACDS 0003127–29."[5] The parties referred to the document in non-privileged communications at least three times over a six-month period, without a claim of privilege. Appellant then listed the document on its trial-exhib-

it list. About a week later, appellant received a letter from respondents asserting privilege and demanding return of the document.

■ After a hearing, the district court determined that the document was discoverable. The district court found that, although privilege had initially attached to the document, during the period before it was identified as privileged, it had been used several times in motion practice and deposing key witnesses, and the information it contained was well known to both parties, so that "it would be unfair and futile ... to attempt to erase [the] imprint that the document has made."

Respondents contend that the district court abused its discretion in determining that respondents waived the privilege given that, once outside counsel became aware that the document was privileged and that appellant intended to use it at trial, respondents immediately notified appellant and demanded its return. *See* Minn. R. Civ. P. 26.02(f)(2) (stating that "[i]f information is produced in discovery that is subject to a claim of privilege ..., the party making the claim may notify any party that received the information of the claim and the basis for it").

We agree with the district court that respondents waived their claim of privilege. The document was marked "confidential" and had been referred to several times in depositions and motion papers without respondents' objection. Respondents had more than adequate time to assert a claim for privilege, but failed to do so until the document appeared on appel-

---

**5.** This two-page document is a working draft of responses prepared by respondents' employees to questions that the Mine Safety and Health Administration posed in connection with that agency's accident investigation. The responses were prepared at the request of respondents' in-house counsel and initially provided to that counsel.

lant's exhibit list. We affirm the district court's order concluding that respondents waived any claim of privilege relating to the document.

## DECISION

Because the district court did not err by granting summary judgment on appellant's fraud, misrepresentation-by-omission, and rescission claims, we affirm on those issues. Because the district court erred by concluding that appellant's warranty claims were merged into strict-liability claims and barred under the economic-loss doctrine, we reverse the district court's judgment dismissing appellant's claim for breach of implied warranty of merchantability, and we remand this claim to the district court. But because we conclude that appellant has failed to show the existence of a genuine issue of material fact as to reliance on representations relating to the drill's slope capabilities, we affirm summary judgment on appellant's claim for breach of warranty of fitness for intended use. The district court properly denied appellant's motion to amend the complaint to allege punitive damages and properly concluded that respondent had waived attorney-client privilege with respect to the inadvertently disclosed discovery document.

**Affirmed in part, reversed in part, and remanded.**